and it then granted an order of reference to ascertain the facts.    From the order allowing the amendment and from the order of reference this appeal is taken.

The paper which conferred jurisdiction upon the court to act was the petition.    It appeared therefrom that it asked for the voluntary dissolution of the corporation.    No defect is claimed to have existed in the petition, and the court was thereupon authorized to grant an order to show cause.    Such order was in all respects perfect, save that it did not contain the date upon which it was returnable.    The omission in this particular from the order was the result of inadvertence.    The copies which were served were in no wise defective, either in this respect or in any other.    It is clear, therefore, that neither the applicant, nor any of the other parties interested in the proceeding, were misled to their prejudice; nor could the omission of the date from the original order work harmful results, or mislead to the prejudice of any creditor. Under similar circumstances, it has been held that the order, as granted, was not a nullity, as the court possessed jurisdiction to grant it, and, as the defect was harmless, it could be cured by an amendment nunc pro tunc, and thus the defect be cured.    Matter of C. J. Co., 128 N. Y. 550, 28 N. E. 665.

The propriety of the amendment is clear, and the authority to grant it seems to be ample, not only as expressed in the adjudicated cases, but under the provisions of sections 723 and 724 of the Code of Civil Procedure.    There had also been a general appearance by the appellant in the proceeding before the motion to dismiss was made.    Under such circumstances, the authority to grant the order is abundant. 1 Enc. Pleading & Practice, pp. 666, 667, and cases cited.

It follows that the order should be affirmed, with $10 costs and disbursements.    All concur, except VAN BRUNT, P. J., who dissents.

---

(81 App. Div. 606.)

GUNTHER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. RAILROADS—PERSON ON TRACK—INJURY—CHARACTER AS TRESPASSER.
    Defendant company's tracks ran alongside a river.    City streets terminated at a retaining wall on the land side of the tracks, and at the end of one street, opposite a hotel on the river's edge, stairs led down to the tracks, and persons were in the habit of crossing to the hotel at that point.    Five blocks further down the company had provided another crossing, the intervening space being used as a railroad yard, and not otherwise occupied except by the hotel.    Persons frequently passed along the tracks, nor were they forbidden by signs from doing so.    Plaintiff's intestate, returning from fishing at the hotel, was prevented from ascending the opposite stairs by a train of cars, and, rather than await their removal, was proceeding along the tracks to the lower crossing, when he was struck and killed by a train.    Wanton or willful injury was not charged.    Held, that plaintiff's intestate was a mere trespasser, and plaintiff's action was properly dismissed.

Appeal from Trial Term, New York County.

Action by Herman Gunther, as administrator, against the New York Central & Hudson River Railroad Company.    From a judg-

ment dismissing the complaint at the close of plaintiff's case, plaintiff appeals. Affirmed.

The action was brought to recover damages for the death of the plaintiff's intestate, who, at about 7 o'clock in the evening of August 25, 1901, while walking with several companions southward upon the defendant's tracks, which are along Hudson river west of Riverside Drive, was struck when between Seventieth and Sixty-Ninth streets by a train running backwards, and going also in a southerly direction, and instantly killed. The train consisted of a car and a caboose pushed by an engine, and on the head platform of the caboose was a green light. It was about half an hour after sunset. The deceased and his friends had previously looked backward, but had not seen the train, and no warning of its approach was given, excepting that when it came along some one on the train cried out as in fear of an accident, and companions of the plaintiff's intestate, who followed him upon the track, were thus apprised of its proximity, and enabled, by jumping to one side, barely to escape with their lives. The train, after striking the man, continued on its way until it came to a stop at Sixty-Seventh street. The deceased lived in Sixty-Fifth street, and had been fishing, with others, from a raft in the Hudson river opposite Seventy-Second street, this raft being alongside a house or tavern built upon piles over the water, and frequented for at least five years previously by fishermen and others desiring refreshment. Easterly of the tracks was a retaining wall, which, as shown by the testimony and the diagram offered in evidence, was, at Seventy-Second street, about 44 feet high, and at Sixty-Seventh street about 13 feet in height. At this wall the cross-streets terminated, and at Seventy-Second street there was a flight of steps leading down to the lower edge of Riverside Park, and from this point there was a ladder for descending a few feet further to the tracks. At Sixty-Seventh street a footbridge had been erected by the defendant over the tracks, and stairs led to the ground west of the four main tracks. Above Seventy-Second street there was a crossing at Seventy-Ninth street, at which a flagman was stationed. No signs were provided forbidding people to walk upon the tracks. It was testified that when the plaintiff's intestate started homeward there was a line of freight cars standing on the easterly track, which blocked the way to the stairs at Seventy-Second street, and he turned southward, and walked with his companions along one of the north-bound tracks. There is evidence that people were in the habit of coming to the river to fish and to visit the tavern on the river front opposite Seventy-Second street, and were frequently seen walking upon the tracks between that point and Sixty-Seventh street. It does not appear, however, that east of the tracks between these two streets there were buildings or docks owned or used by persons other than the railroad, but, on the contrary, it was testified that, in addition to the four main tracks, there were many switch and spur tracks, forming a yard used by the defendant, extending from Seventy-Second to Sixtieth street, and in which there were a roundhouse, elevators, and other structures devoted to railroad purposes. The court, upon the evidence, granted the defendant's motion, made at the close of the plaintiff's case, to dismiss the complaint, and from the judgment so entered the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Thomas P. Wickes, for appellant.
Robert A. Kutschbock, for respondent.

O'BRIEN, J. In contending for a reversal of this judgment the appellant insists that where the public for a long period of time have notoriously been in the habit of walking upon, along, or across the tracks of a railroad at a point not in the traveled public highway, with the acquiescence of the railroad corporation, this acquiescence amounts to a license, and imposes the duty upon the corporation as

to all persons so using the tracks to exercise reasonable care in the running of its trains so as to protect them from injury; and that whether, under the circumstances of a given case, a railroad corporation did exercise such care is a question of fact for the jury. In support of this contention many cases are cited in this and the federal jurisdiction, but the distinction between the facts of these cases and those in the case at bar can be made apparent.

In Barry, Adm'r, v. N. Y. Central, 92 N. Y. 289, 44 Am. Rep. 377, it appeared "that the owners of lots abutting on the railroad at this point had a right of way across defendant's tracks, and that for more than thirty years the public were in the habit of crossing the tracks at this point to reach Madison and other streets lying northerly and easterly of the railroad, the proof being that several hundred people crossed there every day"; and the court said:

"There can be no doubt that the acquiescence of the defendant for so long a time in the crossing of the tracks by pedestrians amounted to a license and permission by the defendant to all persons to cross the tracks at this point. The circumstances imposed a duty upon the defendant, in respect of persons using the crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but, so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury."

In Byrne v. N. Y. C. R. R., 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512, there was "evidence tending to show that there was an alley at the place where the plaintiff was injured, which was extensively and notoriously used by the public, without any objection on the part of the defendant, or any question as to the right of all persons to use it"; and there the court held that the acquiescence of the railroad corporation amounted to a license, and imposed upon it the duty, as to all persons so crossing, to exercise reasonable care in the running of its trains, so as to protect them from injury; and the fact that a bell is rung where a train is backing toward the crossing does not, as matter of law, establish reasonable care, but it is for the jury to determine as to whether, under the circumstances, any other precautions should have been taken. In De Boer v. Brooklyn Wharf & Warehouse Co., 51 App. Div. 289, 64 N. Y. Supp. 925, it appeared that the place where the plaintiff was injured had "been open to the public for at least twenty-eight years," and was "on a line continuing Conover street, and leading to other public streets, to Hamilton avenue and the ferry," and the use by the public was as general as the use of other streets both by pedestrians and vehicles, and the defendant was held to owe to them the exercise of reasonable care in the movement of its trains. And in Felton v. Aubrey, 20 C. C. A. 436, 74 Fed. 350, it was held (headnote) that, "if it is shown that the public has for a long period of time customarily and constantly, openly and notoriously, crossed a railroad track at a place not a highway, with the knowledge and acquiescence of the company, a license or permission by the company to all persons to cross the tracks at that point may be presumed."

All these cases, therefore, point out what is the well-settled rule of law that, where a passageway or a lane or other facilities are provided for or allowed to the public for crossing tracks, and the public have used such means openly and notoriously for some length of time, the duty rests upon the railroad company to exercise care in the management of its trains while approaching such passageway or lane similar to that demanded of them in approaching and crossing a public street which has been intersected by the tracks. Although such a passageway exists by which the public may go across the tracks, and this may—depending upon the degree of care exercised—impose a liability upon the company, it would do so only with respect to persons who were injured while crossing the tracks at such place; and the existence of the passageway would not justify persons using it as a means of reaching the tracks, and then proceeding upon them beyond that point for their own convenience. In other words, it will be noted that it is only for those who are injured at public crossings, or at such other places as are equivalent to public crossings, that the law imposes upon the railroad company the duty of exercising care.

If the plaintiff's intestate, after coming down the steps leading from the eastern embankment or retaining wall at Seventy-Second street to cross the tracks in order to reach the public house or wharf on the other side, where people were accustomed to go to fish or obtain refreshments, was, while so crossing, opposite Seventy-Second street, injured through the negligence of the defendant, and without fault on his part, then there would be much force in the contention that the principle established in the cases cited should here be applied. He was, however, injured between Sixty-Ninth and Seventieth streets, while proceeding along the tracks for the purpose of reaching steps leading from the embankment or retaining wall at Sixty-Seventh street. His failure to cross the tracks and go up the steps at Seventy-Second street is sought to be excused and explained by the statement that there was a freight train which intercepted passage at that point, and that, as he lived in Sixty-Fifth street, it was more convenient for him and his companions, in preference to waiting, to use the tracks as a pathway to the steps at Sixty-Seventh street. It was while so using them, and when between Seventieth and Sixty-Ninth street, that he was struck. The fact that there were stairways at the streets named which enabled persons to cross and reach the river front did not justify, nor could they be regarded as an invitation or giving a license, to persons to use the railroad tracks between Seventy-Second and Sixty-Seventh streets as a pathway or street, at their convenience. This intervening space constituted part of the yard of the railroad company, and it does not appear that between Seventy-Second street and Sixty-Seventh street west of the tracks on the river front there were any buildings or docks belonging to or any business conducted by persons other than the company for railroad purposes, except, as stated, the small house or tavern which was used by the fishermen, and furnished to them and others who might go there refreshments, which house was opposite Seventy-Second street.

We are not now concerned with what would be the rights of railroad employés who may have been obliged, in order to reach portions of

the yard near the river front, to use the tracks for that purpose; and there is certainly nothing in this record to show that the public had any right to infer an invitation on the part of the railroad company, either express or implied, to use them as a pathway or street.  If it had appeared that persons other than the defendant had erected buildings or leased property west of the railroad track and along the river front, and that to reach such premises for the purpose of business or trade it was necessary to use the tracks as a passageway, and if it further appeared that the public had openly and notoriously been allowed so to use them for any considerable length of time, then an entirely different question would be presented.  There is evidence, it is true, that persons had been seen walking upon the tracks; but, unless it were further shown that they so used them in their ordinary course of business, as matter of necessity, and had the right or had been allowed to go upon them in order to reach places west of the railroad, the company would not be obliged to take notice of their frequenting and using the tracks.   With respect to people who merely went to the river front to fish, and for their own convenience or pleasure selected places not opposite the steps at Seventy-Second and Sixty-Seventh street, and in this manner were upon the defendant's property, it was not called upon to exercise care, because it had no reason to expect that they would use the tracks as a pathway, nor had they a right so to use them. Such use was merely by sufferance, and at the risk of those who ventured upon them, and the rule imposing the duty upon the company of exercising care at crossings or passageways openly and notoriously frequented by the public would not be applicable.

In principle, therefore, we can see no distinction between the duty devolving upon the railroad company under the facts here appearing. than that which existed in the cases of Downes v. Elmira Bridge Co., 41 App. Div. 339, 58 N. Y. Supp. 628, and Lagerman v. N. Y. Central, 53 App. Div. 283, 65 N. Y. Supp. 764.   In the former it appeared that a dock on which plaintiff was injured had been used, when in normal condition, by the general public for the purpose of business, but that at the time the plaintiff met with the accident a reconstruction of the dock was in progress.   The court held that:

"This being private property, and the condition of the dock being such as to indicate that the public right of use was interrupted, the obligation of the defendant was quite different from what it would have been had the work been prosecuted in a public street.  *  *  *  The disarranged condition of the dock, and the character of the work being prosecuted thereon, excludes the implication of an invitation to the plaintiff to come thereon, and under such circumstances no duty was imposed to take affirmative steps to guard from danger persons who trespass thereon or who are there by sufferance.  Victory v. Baker, 67 N. Y. 366; Flannigan v. American Glucose Co. (Super. Buff.) 11 N. Y. Supp. 688; McAlpin v. Powell, 70 N. Y. 126, 26 Am. Rep. 555.  The plaintiff's right, therefore, was to be protected from wanton and willful injury.  Beyond this the defendant owed him no obligation.  Boyle v. N. Y. L. E. & W. R. R. Co., 39 Hun, 171, affirmed in 115 N. Y. 636, 21 N. E. 724."

In Lagerman v. N. Y. Central, supra, the plaintiff was standing upon a retaining wall of the Hudson river westerly of the defendant's tracks, fishing, and, laying his pole down, he walked in an easterly direction, and was struck by a car suddenly moved backward without notice or signal, and was injured.   The court said:

"We are unable to see any basis in these facts to support a recovery. The most that can be said is that the plaintiff was at this particular place by the sufferance of the defendant. It does not appear that he. had any license to be on the defendant's premises at this point, and his act in going there did not raise any presumption of right by license. If he was not, therefore, a trespasser, he could claim no higher right than that of being there by sufferance. He was not invited, but only permitted, to be at that point. And this condition did not impose upon the defendant the obligation of observing care in any degree for the protection of the plaintiff. The only obligation resting upon the defendant was not to inflict wanton and willful injury, and this was the highest measure of duty which the plaintiff could exact."

We do not think, therefore, that because the deceased, as a matter of convenience, was averse to waiting until the freight train had been moved to enable him to ascend the steps at Seventy-Second street, he was justified in making use of the tracks of the company as a pathway to the steps at Sixty-Seventh street. To quote from the Lagerman Case, supra, while so using them "the only obligation resting upon the defendant was not to inflict wanton and willful injury." There being no claim herein that the death of plaintiff's intestate was due to wanton or willful injury, the whole case being predicated upon the failure of the railroad company to observe that degree of care which it was insisted was by law imposed upon it, and the company, as we have endeavored to point out, not having violated any obligation which it owed to the intestate, it follows that the judgment dismissing the complaint was right, and must be affirmed, with costs.    All concur.