DEBORAH L. MANGAM, Appellant, v. THE PRESIDENT AND TRUSTEES OF THE VILLAGE OF SING SING, Respondent.

*Highways — land bounded upon, presumed to extend to the center of the road — abandoned, if not traveled or used for six years — abandonment of a part of the highway — use for a public purpose other than that of a highway.*

The legal presumption is that by a conveyance of land, described as bounded upon a highway, title is acquired to the center of the highway, subject only to the public easement for highway purposes.

Where a highway has ceased to be traveled or used as such for six years, it ceases, by virtue of 1 Revised Statutes, 520, section 99, as amended by the Laws of 1861, chapter 311, to be a highway for any purpose, and thereupon the abutting owner becomes entitled to recover the premises lying between his lands and the center of the highway.

It is not essential, in order to afford such right, that the entire highway should be abandoned; the nonuser of any portion of it for six years operates as a relinquishment by the public of the part thus abandoned; and the use of such land for any other public purpose, as, for example, for that of a reservoir and public pump, cannot prejudice the right of the abutting owner to recover to the center of the abandoned highway.

APPEAL by the plaintiff, Deborah L. Mangam, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 15th day of February, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Westchester, and also from an order bearing date the 6th day of February, 1896, and entered in said clerk's office, denying the plaintiff's motion for a new trial made upon the minutes.

*II. Aaron*, for the appellant.

*John Gibney* and *Smith Lent*, for the respondent.

BRADLEY, J.:

The action is ejectment, commenced in 1892, to recover a parcel of land situated within the village of Sing Sing and described by metes and bounds in the complaint. In the deed of conveyance under which the plaintiff claims to have taken title, it is described as bounded " Easterly by the Highland turnpike road; northerly and northwesterly by a road leading from the Highland turnpike road to the Farmers' landing ; southerly by the churchyard or land of the First Baptist Church of Mount Pleasant, containing about one-eighth of an acre of land." The Highland turnpike road has taken the name of Highland avenue and the other road that of Main street. As now represented, Highland avenue on the east has a northwesterly, Main street on the west a northeasterly course, and coming together at the apex of a triangle, having for its base a sidewalk on the south, adjacent to the north side of the house included in the above-described premises, and may be designated as the " Hull Building." This triangular piece of land is known as " Pleasant Square " and is the land in dispute. It may be observed that in the line of conveyances by deeds since 1814 the land intended to be conveyed is described substantially the same as in the deed first-above mentioned, and in those of 1830 and since, of which there were several, the description is in the same language as it is in that deed.

The main controversy of fact upon the trial has relation to the location of Main street, at its approach to and junction with High-land avenue, at an early day when such description was given which was followed by the later deeds. The evidence on the part of the defendants is to the effect that until after 1830 Main street turned quite abruptly to the east, went along close to the Hull building into Highland avenue, thus occupying what has later been the triangle, or a portion of it, as part of the street or highway. To that situation the description in the deeds would be alike applicable. In or about the year 1830 a house, which had been erected by one Ward on the northwesterly side of Main street, in its bow near the junction of the two streets, became the property of Trowbridge, and

was by him moved back westerly about forty-five feet, and thereafter the main line of Main street was at that place moved further west and its junction with Highland avenue was further north, thus apparently making the apex of a triangle. The evidence on the part of the defendants tends to prove such and the further facts that for many years thereafter this triangular piece of land was open and used in common to pass over with teams and wagons, and that it remained open to such use until about 1852, when the trustees of the village, by one of their number, inclosed it with a chain upheld by posts. There is some conflict in the evidence of the parties as to the time this triangle was first inclosed. The defendants put a pump for public use and (in 1857) a reservoir in the northern portion of it. There was evidence given to the effect that for many years after the Hull building was inclosed by one Bacon, in about 1830, Main street passed along adjacent to the north side of it, and that when the building was used as a hotel, in and after 1840, carriages were driven from either way to the entrance on that side of it. The evidence, therefore, permitted the conclusion that this triangular piece of ground north of the Hull building was at one time part of the highway, and, therefore, that no part of it otherwise than subject to such easement as then existed in the public as a highway was conveyed by the deeds to the plaintiff and her predecessors.

But it is urged on the part of the plaintiff that although the location of the street may at one time have been as claimed on the part of the defense, it had at that place been abandoned and not used as a highway for more than six years before the commencement of this action, and that consequently she was entitled to recover the possession of the strip of land bounded on the north by the center of what had formerly been used as a highway. If this assumption of fact is supported, the plaintiff was entitled to such relief founded upon the presumption that, by the conveyance of land described as bounded upon a highway, title is taken to its center subject only to the public easement for such purpose. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Mott* v. *Mott*, 68 id. 246; *Haberman* v. *Baker*, 128 id. 253.)

The statute provides that " all highways that have ceased to be traveled or used as highways for six years shall cease to be a high-

way for any purpose." (1 R. S. 520, § 99, as amended by Laws of 1861, chap. 311.) The conclusion was warranted by the evidence that this land in dispute was not used as a highway for nearly forty years preceding the time of the commencement of this action. And, if such were the fact, it is difficult to see why, presumptively, the plaintiff was not, by force of the statute, entitled to recover the land extending north to the center of the highway as it had formerly existed there. It is not essential to such consequence and to afford such right in the adjacent owner that the entire street or highway be abandoned. The nonuser of a portion for such period of time operates as a relinquishment by the public of the part so abandoned as a highway. (*Hovey* v. *Village of Haverstraw*, 124 N. Y. 273; *E. B. Co.* v. *Village of Haverstraw*, 142 id. 150.) The construction to the effect that the statute is applicable only to highways laid out or dedicated within six years prior to the passage of the act referred to, as indicated in *Amsbey* v. *Hinds* (46 Barb. 622), is not sustained. (S. C., *sub nom. Amsbry* v. *Hinds*, 48 N. Y. 57.)

The court charged the jury that, when a highway is abandoned, the land included within it reverts to the adjoining owners. The court refused to charge that if the road had at one time, as claimed by the defendant, abutted against the Hull building, the plaintiff was entitled to recover the possession of one-half in width of the land which had then been occupied there by the road, and the plaintiff excepted. The court, however, did submit to the jury the question "whether the public has relinquished and abandoned its claim to this property or not." On being requested by the plaintiff's counsel to charge the jury that when land is dedicated for highway purposes the municipality acquires no right to use it for other than highway purposes, the court said: "For public uses. And, if they find that there has been no abandonment of this land for public use, but that it has still been used, as testified here, * * * for public uses, reservoir purposes and others, and maintained by the public, they have not ceased to occupy it for public uses, and it does not come within the statute." The plaintiff's counsel excepted. On request of the defendant's counsel the court charged that the six years' abandonment had no application whatever to this case; also that it may be used for public purpose other

than a public highway ; also that there is no evidence in this action of any deeds of conveyance of this highway, to which several propositions exceptions were taken. The apparent effect of this last proposition was to take the relation of the plaintiff to the half of the old highway opposite her premises out of the rule stated by the court in the general charge as to the legal right of abutting owners ; and the charge made in response to the request was error. There is evidence tending to prove that prior to 1830 Aaron Ward was in the possession of the land on which the Hull building stands, and used it for garden purposes; that his grantee, Bacon, and other grantees along the line of conveyances have been in the actual possession of the land, and that the description by which the conveyances bounded it northerly and northwesterly was by the highway in question. No reason, therefore, appears why the deeds to the grantees, including the plaintiff, did not presumptively convey the fee to the center of the highway. Nor can it be seen that this charge may not have been prejudicial to the plaintiff. The view of the court, as indicated by the instruction given to the jury in response to the request of the defendant's counsel, was that the use of the *locus in quo* as a highway was not essential to the protection of the right of the public as against the owner of the fee, and that a public use, although not as a highway, was sufficient for the preservation of the right of the public to a continued use, although the use of the property was originally acquired solely for a highway. This is an extension of the rule beyond the limits prescribed by law, and would seem to be a violation of the rights of those from whom land has been derived for the purposes of a highway, and their successors in interest. (*Trustees, etc.,* v. *Auburn & Rochester R. R. Co.,* 3 Hill, 567; *Williams* v. *N. Y. C. R. R. Co.,* 16 N. Y. 97; *Craig* v. *Rochester City & B. R. R. Co.,* 39 id. 404; *Fobes* v. *R., W. & O. R. R. Co.,* 121 id. 505; *Knox* v. *The Mayor,* 55 Barb. 405, 412 ; Gerard on Titles to Real Estate, 756.)

It was error for the court to charge, as in effect it did, that the statute relating to abandonment of a highway as such had no application to the case. The statute in its effect was applicable, if the highway adjacent to the Hull building had ceased for the requisite time to be used as a highway. We do not hold as matter of law that it had, but at least the evidence was such as to fairly present

that question for the consideration of the jury. It is not important that what was known as "Pleasant Square" was not within the main line of travel on the two streets, if it was still used as a public highway in the sense applicable to that term. But if not such, it could not, as against the owners of the fee, be lawfully held by the defendant solely for another and distinct public use. The question whether or not it was abandoned as a highway was not submitted to the jury, but their attention was called to the question whether it continued to be devoted for any public use.

These views lead to the conclusion that the judgment and order should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and new trial granted, with costs to abide the event.