(61 App. Div. 18.)

## TOWNSEND v. BISHOP.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. HIGHWAYS—ABANDONMENT—DIRECTING VERDICT.

Laws 1861, c. 311, § 1, provides that a highway that has not been used for six years shall cease to be such. A roadway through plaintiff's farm was laid out in 1800, and used as a public road until 1861, and in 1891 plaintiff asked permission of the highway commissioners to fence it, and was allowed to maintain bars across it in the summer season. Plaintiff sued defendant for trespass for removing posts erected in the roadway by plaintiff, and defendant justified on the ground that he was a highway commissioner. *Held,* that it was error to direct a verdict for plaintiff, since the question whether the highway had been abandoned was for the jury.

2. SAME.

Laws 1861, c. 311, § 1, as amended, provides that every public highway already laid out. and that shall not have been opened and worked within six years from the time of its being laid out, and every such highway thereafter to be laid out that shall not be opened and worked within a like period, shall cease to be a road for any purpose whatever, and any highway that has ceased to be used for six years shall cease to be a highway; and section 2 declares that the provisions of this act shall apply to every public highway and private road laid out and dedicated to the use of the public within the last six years, and to every such highway thereafter laid out. *Held,* that by section 2 the act is not limited to highways, as were laid out within six years prior to the passage of the statute.

Action by Lewis M. Townsend against George Bishop, Jr. A verdict was directed in favor of plaintiff, and defendant's exceptions thereto ordered heard in the first instance in the appellate division. Exceptions sustained.

This action was commenced November 1, 1895, to recover damages for trespass alleged to have been committed upon premises owned by the plaintiff in tearing down and removing fence posts. The defendant justified his conduct on the ground that the locus in quo was a public highway in the town of Lodi, of which he was highway commissioner, and that said alleged acts were done in removing said obstructions, which were along the center of said highway.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles A. Hawley, for plaintiff.
J. N. Hammond, for defendant.

SPRING, J.   The single controverted question in this case was: whether the premises over which the contention arose was a public highway, and much proof was presented bearing upon that subject. We think its determination essentially rested with the jury, and the error of the trial judge in directing a verdict requires this court to sustain the defendant's exceptions to the refusal to submit the case to the jury.   The records of the town of Ovid give the descriptions of a highway of which the territory in dispute forms a part, bearing date May 7, 1800, and purporting to be signed by the commissioners of highways and the town clerk of the town.   The present town of Lodi, in 1826, was taken from the town of Ovid, and the records, as early as 1827, show that this part of the road was included in one of the road districts of the town of Lodi, and has continued so to be treated on the records ever since.   The proof in vindication of the highway runs back to 1830, and in its early history its use was evidently more extended than in recent times.   The road was part of a highway extending from Seneca Lake to Cayuga Lake.   It crosses the lake road, which runs parallel with Seneca Lake, about three-fourths of a mile from the lake.   The plaintiff occupies the farm north of this alleged highway, and the second one west of the lake road, and which farm reaches to the lake.   That the highway was opened and is still used to the lane, which gives access to the plaintiff's buildings, is not disputed, but the contention of the plaintiff is that from this point to the lake there is no public road, and if one ever existed it has become obsolete by abandonment and long disuse.   Before the war for the suppression of the Rebellion there were fences indicating the boundaries of this highway, and there was then considerable traffic over it to the lake, and that it was then recognized and treated as a public highway seems reasonably clear.   There were, at least, in that early period, two dwellings west of Townsend's lane, the occupants of which made use of this road.   These buildings long ago disappeared.   As the use of the road lessened, these line fences decayed and were removed, and the plaintiff and his predecessors in title put fences or bars across the road, and considerable testimony is directed to these barriers.   The defendant's proof tends to establish that the obstructions were merely bars put in to enable the plaintiff to pasture his fields, and, as the highway was not used extensively, when the traveler passed along it the bars were let down; that this was assented to for the convenience of the plaintiff, and not with any intention of abandoning the road or destroying its public character.   The witness Burden testified that the plaintiff asked for this privilege in 1891, in order that he might keep his stock in his fields, and consent was given.   The proof on the part of the defendant also tends to show that when these fields were not pastured the bars were taken out, leaving gaps, and the roadway was then unimpeded.   The defendant also gave evidence from which the jury might have found that during all this period there was more or less user of this land

as a highway; that teams passed over it, hauling grain, grapes, hay, and produce, and that it has always been a beaten roadway; and the photographs received in evidence give more or less support to this contention. Proof was also given that this alleged highway has been ploughed and scraped, and the assessment for the road district was, on one or two occasions anyway, worked out on this part of the road. The highway, as originally laid out when near the lake, diverged from a direct line, and, as the surface of the road was uneven, formed a zigzag southwesterly course to the lake. That portion of the highway, at least, seems to have been discontinued, and the proof, even on the part of the defendant, only sustains the user of the highway from the Townsend lane to this point of divergence.

These propositions were sharply contested, and it was for the jury to determine whether this disputed territory retained its character as a highway at the time of the alleged trespass. If the defendant's claim that it has never been abandoned for six years, but has been continuously used as a highway, even though not extensively, be correct, then the plaintiff cannot maintain the action. If, however, the alleged highway has been abandoned, and not kept open as such, but that the use was intermittent, and as a mere private lane, or not confined to any particular territory, but simply the passage of some hunter or some wayfarer, who might occasionally drift along it as well as any other part of the farm, then the plaintiff's use of the land was not an obstruction, and the defendant would be liable for whatever damages resulted from his trespass. These were peculiarly questions of fact, and we do not intend to give any intimation in regard to the effect of the evidence, but have gone over some of its prominent features in this cursory way, for the purpose of showing that, upon the most favorable view of the testimony for the defendant, he was entitled to have the case passed upon by the jury.

There is only one question of law to which it is at all essential to refer. Chapter 311 of the Laws of 1861 amended the Revised Statutes in respect to highways. It provides that:

"Every public highway * * * already laid out, * * * and that shall not have been opened and worked within six years from the time of its being so laid out, and every such highway hereafter to be laid out that shall not be opened and worked within like period, shall cease to be a road for any purpose whatever; * * * and all highways that have ceased to be traveled or used as highways for six years shall cease to be a highway for any purpose."

Section 2 of the act is as follows:

"The provisions of this act shall apply to every public highway and private road laid out and dedicated to the use of the public within the last six years, and to every such highway hereafter to be laid out."

It is contended that by section 2 the effect of the act is limited to such highways as were laid out within six years prior to the passage of the act and those laid out subsequent thereto, and that it has no application to this highway laid out in 1800   While there is some plausibility in that construction, we think such was not the

legislative intent. The phraseology of the preceding section may have left it somewhat doubtful whether a highway laid out within the six years prior to the enactment might not be excluded from its operation. To clear up any such interpretation, and make it applicable to every highway abandoned for the period of six years, the second section was retained as in the Revised Statutes before the amendment.

The first section of the act is very general in its application to all highways that shall be used as such for six years, and, if this broad language was sought to be limited by the preceding section, we should expect to find that purpose definitely expressed. The amendment was solely to the first section, with the purpose of making it applicable to all highways not used for six years, and the retention of the second section may have been through inadvertence. However that may be, force can be given to it as above suggested, without limiting the scope of the prior section. The trend of authority is in support of this enlarged construction. Mangam v. President, etc., 11 App. Div. 212, 42 N. Y. Supp. 950; People v. New York Cent. & H. R. R. Co., 69 Hun, 166, 23 N. Y. Supp. 456; City of Buffalo v. Hoffeld, 6 Misc. Rep. 197, 27 N. Y. Supp. 869; Christy v. Newton, 60 Barb. 332. We are aware that a contrary view was taken of the effect of this section in Amsbey v. Hinds, 46 Barb. 622; but in that case, on appeal (48 N. Y. 57), the court expressly dissented from the restricted construction of the court below. The evidence of the defendant tends to show that there has been no abandonment or nonuser of the alleged highway at any time for six consecutive years, but that its use has been continuous, and the only purpose in construing the statute is for the guidance of the trial court upon another trial of the case.

The defendant's exceptions should be sustained, and a new trial ordered, with costs to the defendant to abide the event. So ordered. All concur.