Feane Del Yecchiq, J.
This is an action for a judgment declaring that plaintiffs are the owners in fee of a certain disputed area in the town of Sandy Creek, New York, free from any right of way thereon claimed by the defendant.
The land in question is located on the cast shore of Lake Ontario and has come to plaintiffs through a warranty deed executed November 8, 1950 by J. Bonald Munroe. Defendant town does not question the fee title of plaintiffs or of their predecessors but claims that the land is subject to a right of way for road and/or highway purposes which is 49.5 feet wide and extends a distance of more than half a mile from its easterly terminus at what was originally known as Eoberts Corners at the intersection of two roads, running in a generally westerly direction to a bridge crossing a creek and continuing about 800 feet across sand to the high water line of Lake Ontario, for a more particular description, of which reference is made to an instrument known as 6 4 Alteration of an old road on lot 55 from *918 Roberts Corners westerly to the lake ” filed in the office of the clerk of the Town of Sandy Creek on September 28,1883.
Two questions are presented by this action: (1) Was a right of way created across the land claimed by plaintiffs, and (2) If a right of way existed, had it been abandoned prior to the commencement of this action?
As to the first question, the court is satisfied that a highway across the land now owned by plaintiffs was validly established prior to their acquisition of title in November, 1950.
Cases decided in this jurisdiction generally recognize four methods by which a public highway may be created. These include:
1. appropriate proceedings as provided by law,
2. prescriptive use by the public for more than the statutory period,
3. dedication through offer followed by implied acceptance, and
4. dedication through offer together with actual acceptance.
(City of Cohoes v. Delaware & Hudson Canal Co., 134 N. Y. 397; 1 Warren’s Weed on New York Real Property [4th ed.], pp. 101-102, and cases there cited.) It is the last of the above methods which is pertinent to the present action.
Defendant put in evidence a certified copy of an order and survey filed in the office of the town clerk of the Town of Sandy Creek September 28,1883, which reads in part as follows: “ All the Commissioners (of Highways of the Town of Sandy Creek) having met and deliberated on the subject embraced in this order, it is ordered and determined by the said Commissioners upon the application and by the consent of one through whose land the alterations hereinafter described is to be made that the highway leading from the house of J. Roberts to the shore of Lake Ontario in said Town be altered according to the following survey which the Commissioners have caused to be made thereof ’ ’. Then followed a course description of a highway as set forth in paragraph 5 of the complaint. The highway, which is more than one half mile long and three rods wide, lies across land presently owned by the plaintiffs.
At the trial plaintiffs’ counsel asserted that the reference points contained in the description were not sufficiently identifiable to permit an accurate location of the highway. However, the defendant introduced testimony by an assistant county engineer of the County of Oswego to the effect that he had, on three occasions, laid out the described highway on the basis of the *919 order and survey of 1883. This testimony was supported by a detailed explanation of the manner in which the surveyors arrived at their determinations. There was also evidence by a long-time resident of the area who was able to fix one of the important reference points in the description as being in the immediate vicinity of the highway claimed by defendant. Furthermore, Exhibits 21 and 22 are conveyances executed in 1908 and 1909 describing premises having 17 rods and 12 rods respectively along the center of the disputed highway starting from the center of the bridge and running westerly toward the lake. In view of the above testimony and the references contained in the recorded deeds, the court is satisfied that the highway described in the order and survey of September 28, 1883 can be accurately located across the property of the plaintiffs.
The order and survey above referred to constitute evidence both of dedication and of acceptance of the highway, which has not been overcome by any proof offered by plaintiffs. The fact that there has not been presented a formal dedication of the highway by the owner of the servient estate is not significant. Dedication may be accomplished without a deed or writing by the donor. (Cook v. Harris, 61 N. Y. 448, 453; Auslander v. Strain, 81 N. Y. S. 2d 425, 426.)
Here, the recitation in the order that the establishment of the highway was 6 ‘ upon the application and with the consent of one through whose land the alterations hereinafter described is to be made ’ ’ is evidence, unrefuted by plaintiffs, of dedication by the then owner of the area in question.
So also is there proof of acceptance of the described highway by the defendant. Acceptance is a question of fact and in that issue intention of the acceptor, evidenced by acts and conduct, is necessarily involved. (Flack v. Village of Green Is., 122 N. Y. 107, 113, 115.) Acceptance maybe shown by means of the official town records. (Goldrich v. Franklin Gardens Corp., 282 App. Div. 698, 699.) “‘Where a plot is made and recorded, the requisite intention is generally indisputable. ’ (Dillon on Mun. Corp., § 636) ”. (People v. Brooklyn & Queens Tr. Corp., 273 N. Y. 394, 401.) Filing of the order establishing a highway in the office of the town clerk is an acceptance of the highway (Highway Law, § 278) and this order is not rendered void by a failure also to file therewith a formal release by the owner of the subject property. (Engleman v. Longhorst, 120 N. Y. 332, 336.) Use of a portion of a highway by a municipality after the filing of an instrument describing the same is evidence of an acceptance of the highway in its entirety. (Village of Pleasantville v. Siciliano, 141 Misc. 283.) Here, the recording of the order and survey of *920 1883 in the town clerk’s office coupled with maintenance of the eastern end of the described road and of the bridge adjacent thereto — which did not connect with any public highway except the western portion of the road in question that leads to the lake — clearly indicates an intention by the town to accept the dedicated area for highway purposes.
The cases cited by plaintiffs are clearly distinguishable. In Goulding v. Town of Tonawanda (282 App. Div. 321), Goldrich v. Franklin Gardens Corp. (282 App. Div. 698) and Cheney Hammer Co. v. Collins (196 N. Y. S. 25) there was no evidence that the dedication was accepted or that the portion of the road involved was ever used. In Speir v. Town of New Utrecht (121 N. Y. 420) People v. Sutherland, (252 N. Y. 86) and La France v. Town of Altamont (277 App. Div. 917) private roads never dedicated by the owners in fee were involved and the courts were concerned with the establishment of a highway by prescription or user for the statutory period.
We come then to the second question presented, viz., whether that portion of the highway from the bridge to the lake has been abandoned so that the public easement of passage over it has been terminated.
Section 205 of the Highway Law provides in part: 11 every highway that shall not have been traveled or used as a highway for six years, shall cease to be a highway, and every public right of way that shall not have been used for said period shall be deemed abandoned as a right-of-way.” The section further provides that in the event of such abandonment the town superintendent, with the consent of a majority of the town board, shall file a certificate of abandonment in the town clerk’s office. However, the absence of such a filed certificate — as in the present case — does not prevent an abandonment if in fact there has been the required nonuser. (Raynor v. Syracuse Univ., 35 Misc. 83.)
The burden of proving abandonment rests on the party asserting it — here, the plaintiffs Smith. “ When a highway is once shown to exist, it is presumed to continue until it is shown to continue no longer.” (City of Cohoes v. Delaware & Hudson Canal Co., 134 N. Y. 397, 407, supra; Matter of Scheibel v. O’Brien, 230 N. Y. 277.)
Plaintiffs are not claiming, and have not attempted to prove, discontinuance of all of the road described in the order and survey of September 28,1883, but seek to establish abandonment only of so much of the highway as lies between a bridge over the creek connecting North and South Ponds and the high water line of Lake Ontario — a distance of about 800 feet. There is no *921 question that the portion of the described road east of the bridge has long been publicly maintained and serviced and has been regularly used by large numbers of people including all those who approach the shore area to the left of the disputed road where plaintiffs now operate a public beach. The record contains testimony that the defendant town is also maintaining the above described bridge which, together with the road lying east of it, is the only means of access to the private road which plaintiffs have constructed over their own property slightly to the left of the place where the public highway is alleged to continue to the shore.
Plaintiffs’ claim of abandonment of so much of the highway as lies between the bridge and the lake is based largely upon proof that the area is composed of shifting sand overgrown by trees and patches of poison ivy lacking any evidence of road construction or maintenance thereon. Testimony given by plaintiffs’ witnesses indicated that the nature of the sand was 'such that it was extremely difficult to erect and maintain a road in that locale. Plaintiffs themselves were required to bring in large quantities of hard materials when they put in the private road leading to their beach and frequent attention has been required to keep the way free from drifting sands. Plaintiffs also called witnesses who testified that they had not observed any vehicles in recent years travel to the beach over the location of the alleged highway.
In view of the testimony and the photographs put in evidence there can be no question that the physical condition of the area within the boundaries of the described highway negates any idea that the precise area is now being maintained and used as is customary of a common highway for vehicular traffic. Under the peculiar facts of the present case, however, the court is not satisfied that plaintiffs by their proof have met the burden of establishing an abandonment by the public of this right of way to the lake.
Although the roadway east of the bridge has been maintained and kept in repair by the town, it was not practical to maintain and keep in repair the roadway between the bridge and the lake because of the shifting sands. This condition also made it impossible to identify without a survey the actual location of that roadway. Also because of this, trees started to grow within part of the described area, but this has never prevented the public up to the present time from crossing the bridge and traveling westwardly over the sands to get to the lake.
Testimony offered at the trial showed that in the 1890s and the early 1900s a definite path or road existed substantially on *922 the disputed area which ran from the bridge to the beach between cottages located on either side. This road was used by pedestrians and fishermen drawing fish from the shore in wagons as well as by people in horse and buggys and by a few motor vehicles. The number of the latter was however limited since the nature of the area made it unsuitable for automobiles, and, as the popularity of horse-drawn conveyances decreased, vehicular traffic over the road apparently diminished also. The record is clear however that, during all the years from 1883 up to plaintiffs ’ erection of a fence on the west side of the bridge in 1956 no one ever questioned the right of the public as it continued in varying numbers to travel by foot from the bridge to the lake (for bathing, swimming and picnics) at or near the location of the disputed highway.
Although his testimony was conflicting, Mr. Smith admitted that he had been familiar with the area since 1934 when he crossed the bridge and observed a path leading to the lake and that since he had purchased the property he had observed people cross the bridge and walk over the hills of sand in front of it traveling across the sand to the beach.
In 1919 the Y. M. C. A. acquired title to the property by various deeds, one of which, recorded September 4, 1919, conveyed the parcel referred to in Exhibit 22 and described the lot as ‘ ‘ beginning at a point in the center of the highway ” located 17 rods west of the center of the bridge. In 1945 the Y. M. C. A. conveyed what it then owned to Munroe, plaintiffs’ immediate predecessor in title, by a deed recorded April 18, 1945 which repeated the above description and also described the premises previously conveyed by Exhibit 21 as having a frontage of 17 rods along the center of the highway west of the bridge.
In 1946 Munroe had a surveyor lay out lots and prepare and file a map of the area. This map shows an unimproved roadway by two rows of dotted lines curving from the bridge slightly north and back to the shore at a point approximately due west of the bridge, between which are written the words “ Sand Road to Lake ”. Plaintiffs were informed of this right of way in 1949 when they first became interested in purchasing the property and again before they acquired title in 1950 when the notation on the map was pointed out to Mr. Smith and he was told that he could not close the road.
The deeds executed by Munroe after the map was filed conveying some of the lots refer to the sand road to the lake, which deeds appear in the abstract of title offered in evidence by the plaintiffs. These deeds did not grant a right of way to the lake, *923 no doubt because both the buyers and the seller regarded the “ Sand Road to Lake ” as a means of public access to the shore.
In the Spring of 1951 plaintiffs started and have each year since continued to make improvements for the purpose of commercializing their property and in connection therewith desired to stop the public from freely going to the lake by crossing the bridge and traveling over the beaten path. It appears that when the plaintiffs indicated their intention to close the highway the town authorities promptly evidenced their interest in the road by causing the highway to be surveyed and staked out in 1953, by directing the removal "of the fence in July, 1956, and by actually entering upon the land to clear the highway in 1957.
All of this evidence leads to only one conclusion — that neither the public, the prior owners of the property, nor the town have ever intended to or have effected any abandonment of the dedicated way.
Plaintiffs have cited the cases of Town of Leray v. New York Cent. R. R. Co. (226 N. Y. 109) and Gucker v. Lewis (249 App. Div. 858) as authority that the public by traveling to the right of the described highway has effected an abandonment thereof. These decisions are not so interpreted by the court. In the Town of Leray case the plaintiff was attempting to have declared the existence of a highway across railroad tracks of the defendant. Although a public street had at one time intersected the tracks, the defendant had long ago constructed a freight house along side its right of way, thus completely obliterating the western end of the highway, and had also removed the bridge which formerly crossed the tracks, which made crossing there impossible. After that time, pedestrians had found their way down the incline to the railroad bed and had walked along and crossed over the tracks, thus arriving at various shops located north of the freight building. In holding that the public street had been abandoned, the court pointed out that the highway west of the railroad tracks — to get to which the public had originally crossed the tracks — had ceased to exist after the erection of the freight house so that when the pedestrians presently crossed over the tracks they were no longer traveling toward their former lawful destination but were entering upon a new and unlawful adventure since, because of the freight house they “ could not go anywhere without walking along the tracks 77 (p. 113), which was forbidden by section 83 of the Railroad Law. Furthermore, as the court also indicated, there was no attempt by the public to use the space between the tracks as a definite highway; instead, “ They have climbed down the bank and then scattered in all directions.77 (P. 113.)
*924 These facts are clearly distinguishable from those in the present case. Here, the road originally dedicated in 1883 had as its obvious purpose the creation of a means by which the public might travel to the shore of Lake Ontario. The evidence shows that since that time people have continuously intended to pursue their right of travel from the easterly terminus of the highway across the bridg’e and to the lake shore, using, insofar as they were permitted by the nature of the area, a location in close proximity to the dedicated road west of the bridge — always with the same lawful object, i.e., to gain access to the shore. No artificial obstruction has barred them from pursuing their legitimate purpose; they have consistently sought to use their right of access and have so used it, having regard only for the natural conditions and circumstances which have from time to time compelled them slightly to alter their course.
The Gucker case (249 App. Div. 858, supra), also cited by plaintiffs, is similarly distinguishable. There, the court found that the dedicated highway had never been opened or used. In the case at bar however not only have plaintiffs failed to prove such nonuser but there is positive evidence that the highway was in fact used in early days even by vehicular traffic until the advent of the automobile.
Counsel has not cited any case where an abandonment has been found when, as here, the evidence shows a clear recognition of a right of way by prior owners of the servient estate coupled with an indisputable intention and effort by the public continuously to use the same and where nature alone by its encroachment has compelled a deviation of the route from parts of the dedicated way. No case has been called to the court’s attention where there was a -natural obstruction that made only a part of a highway unusable for a short distance but did not prevent' the public from reaching their destination, in which it was held that the highway was abandoned and the public easement lost.
In Mangam v. Village of Sing Sing (26 App. Div. 464, affd. 164 N. Y. 560) the court said at page 468: “ No encroachment on a highway, whether maintained for six or for twenty years, destroys the public easement.”
Nor is this court willing in .the present case to say that the encroachment of nature, if such there was, over what was at most only a fractional portion of the length of the highway — itself more than one half mile long — worked an abandonment of that part of the road, when prior owners, the public and the town alike, by their conduct, gave witness to the continued existence of the highway all the way from its eastern terminus to the shores of Lake Ontario. Reference has already been *925 made to the clear proof of travel by the public to the lake shore. As for the conduct of the town, in addition to their prompt action in re-establishing the highway location after plaintiffs’ indication of an intention to block the way, the very fact that they have continued through the years to repair and maintain so much of the highway as lies east of the bridge and the bridge itself affirms their belief in the existence of a highway west of the bridge for, absent such a roadway, there would have been no purpose in and no justification for maintaining the approaches thereto.
What has been said assumes, as plaintiffs claim, that the path lately used by the public in traveling from the bridge to the beach lies wholly without the boundaries of the dedicated highway. Actually, however, the record does not justify such a conclusion. Few, if any, of the witnesses called by plaintiffs were qualified accurately to locate the area traveled in recent years in relation to the situs of the highway. There is no testimony that none of the beaten path lies along the dedicated highway and there is testimony that even the dotted lines appearing on the map made in 1946 are not intended to represent an exact location of the apparent traveled path.
The defense, on the other hand, offered credible testimony that the disputed area described in the survey of 1883 has been used and traveled each year. Although at times there were one or two definite paths, most people traveled across one beaten track which went in a generally westerly direction from the bridge to the lake and which followed the course of the survey line. Exhibit 4 shows an open area on either side of the center line of the highway which was clearly traversible by pedestrians. It also appears that the disputed portion of the road was never actually closed until 1956 when plaintiffs erected their fence.
There is good authority that if pedestrians use a part of the width of a highway, although the remainder is obstructed and unusable, there is no abandonment of the way. (Barnes v. Midland R. R. Term. Co., 218 N. Y. 91; Driggs v. Phillips, 103 N. Y. 77; People ex rel. New York Ontario & Western Ry. Co. v. Tax Comm., 190 App. Div. 73; Shipston v. City of Niagara Falls, 187 App. Div. 421; Mangam v. Village of Sing Sing, 26 App. Div. 464, affd. 164 N. Y. 560, supra.) After seeing and hearing the witnesses and considering the exhibits introduced in evidence, the court finds that there has been public travel every summer by pedestrians over the land in dispute and that there has been no nonuser or abandonment of the highway laid out in 1883. Not only have plaintiffs failed to sustain their burden of proving abandonment of the dedicated way but, on the con *926 trary, the evidence affirmatively shows continued travel and enjoyment of the public highway.
Plaintiffs by their brief have referred to a right of way by prescription running from the bridge to the lake shore and have denied that any such right has been acquired. If the question were before it, this court would have no hesitation in finding that such an interest has been created in the public by its continual, uninterrupted and unhindered use of a track from the bridge to the high water mark of Lake Ontario for more than the statutory period. However, in view of the conclusion already reached that there has been no abandonment of the highway dedicated and accepted in 1883, it is not necessary to base this decision upon the existence of a prescriptive right.
A judgment should be entered declaring the existence of a highway as described in the order of the commissioners of the Town of Sandy Creek filed in the office of the town clerk on September 28,1883.
The ease was tried by the court without a jury, at the conclusion of which the parties indicated their desire to submit memorandums of law. No request was made by either side for the submission of findings of fact. Accordingly, judgment may be entered upon the foregoing opinion, which constitutes the written and signed decision of the court as required by sections 439 and 440 of the Civil Practice Act.