Isadore Bookstein, Off. Ref.
This action has been tried once before. Judgment in favor of plaintiffs was reversed on the facts, on the law and in the interest of justice, in order to afford defendant another opportunity to introduce evidence, which for one reason or another, Was not introduced upon the first trial.
The action is for an injunction to restrain defendant and its members from trespassing upon the lands of plaintiffs.
The issue has its genesis in the alleged abandonment of a portion of a town road and in the effect of such alleged abandonment.
The parties own adjacent parcels of land. Their title has been traced to a common source of title, one Robert Livingston, who obtained letters patent from the Crown, of a parcel extending from the Massachusetts border on the east to the Hudson River on the west. Livingston created certain great lots, which went to his sons, out of which there were ultimately carved the parcels finally conveyed to the parties to this action. Their title came from a common source but they did not obtain title from a common grantor, except in the sense that Robert Livingston was the common grantor, in the first instance, of all of the property which he had obtained by the letters patent heretofore referred to.
Plaintiffs’ and defendant’s property abut each other, plaintiffs’ northerly boundary being the southerly boundary of defendant’s property.
For many ye'ars there was a town road, running generally north and south, from Jackson Corner on the south to former Lake Charlotte (now Lake Taghkanie) on the north. The road bisected the properties of both plaintiffs and defendant so that each owned property on the east and west of said road. It ran the entire length of defendant’s property and through the northerly portion of plaintiffs’ property and then continued south through other property to Jackson Corner. As it existed, before any alleged abandonment, both parties and their predecessors had access over the town road to a public highway on the north and to one on the south, as a means of ingress and egress to their respective properties. The older maps showed the road by two continuous parallel solid lines. Some of the *268 later maps show the abandoned portion by broken lines. The map of the Town of Gallatin, Columbia County, 1ST. Y., approved May 23, 1942 shows a break in the solid lines, indicating the portion of the town road allegedly abandoned.
The first affirmative defense of the answer is that the so-called abandoned road (or more accurately, the portion thereof abandoned) is in fact a public road and has continued as such at all times.
Section 205 of the Highway Law (former § 234) entitled “ Highways Abandoned ” deals with two types of abandonment, viz., absolute abandonment and qualified abandonment. The procedure to be followed by the town officials is radically differert in each case and the consequences of the action by the town officials is also radically different in each case. In the instant case, the abandonment of a portion of the ro'ad was in the absolute abandonment class and the procedure followed by the town officials was that which is prescribed in the case of an absolute abandonment, and not the procedure prescribed for a qualified abandonment.
It appears that on August 25, 1928, the Town Superintendent of Highways and the members of the Town Board signed a resolution of abandonment and filed same in the office of the Town Clerk. It also appears that after the adoption of said resolution, signs were placed on the north and south extremities of the portion of the town road, which was abandoned and closed and which were within the bounds of the respective properties of plaintiffs’ and defendant’s predecessor in title. While the evidence does not indicate who placed such signs at the northerly and southerly limits of the abandoned portion of the town road, it is a fair inference that they were placed there by the Town Superintendent of Highways.
On the first trial, the legal sufficiency of the abandonment was not questioned. On this trial, it has been questioned. Evidence has been directed to the question of whether or not there had been such abandonment as justifies the action of the Town Superintendent of Highways and the Town Board in passing the resolution heretofore referred to.
While the resolution may not have been as artistic as would be desirable, it necessarily follows therefrom that it was in purported compliance with the factual situation required by section 205 of the Highway Law, in order to justify the same.
The closing of the portion of the town road did not landlock either of the parties. So far as plaintiffs are concerned, they have access over the southerly portion of the remains of the town road to a public highway on the south and defendant has *269 access over the northerly portion of the town road to a public highway on the north. The result is merely that each of the parties has access over the balance of the town road, to a public highway, the defendant to the north and the plaintiffs to the south, instead of as formerly, to public highways, both on the north and on the south. There is no way, by necessity, for defendant, over the abandoned portion of the town highway and, indeed, no way, by necessity, is claimed or asserted.
It is true that the general rule appears to be that the burden of proof of abandonment of a public highway rests upon the party asserting it. See, for example, Smith v. Town of Sandy Creek (12 Misc 2d 916, affd. 8 A D 2d 688). Defendant cites many cases directed to the same proposition. It is interesting to note that the vast majority of the cases cited on that proposition involve direct actions or proceedings either by or against town officials.
The evidence adduced is far from satisfactory to establish that, for all practical purposes, the portion of the town highway, closed by the town authorities was not completely abandoned. Be that as it may, there is a presumption that public officers have performed their duties. And the burden to establish otherwise is on the one attacking their action. (People ex rel. Melenbacker v. Hubbell, 82 Misc. 624; Kruse v. Town of Ashford, 174 Misc. 367, 371. Cf. Town of Irondequoit v. County of Monroe, 158 Misc. 123, 141.) It may be observed in passing that in the first two of the latter three cases cited, there was a direct attack against the action of the town and its officers in what are now article 78 proceedings. Neither the town nor its officers are parties to this action and I am of the opinion also that their act in making and filing the certificate of abandonment cannot be attacked collaterally in this action. (Cf. Matter of Moore v. Decker, 195 Misc. 545.)
It seems to me that plaintiffs have a right to rely upon the action of the town authorities, until and unless, such action is voided, in an appropriate action or proceeding directed against such officials.
The foregoing rationale seems to be amply supported by the decision of the Appellate Division of this Department in People ex rel. De Groat v. Marlette (94 App. Div. 592). There a certificate of abandonment had been filed. The court held that the act of filing such a certificate was not a judicial act reviewable by certiorari but that mandamus to compel the Superintendent of Highways to maintain the highway is the appropriate remedy, •if the certificate of abandonment was not warranted by the facts.
*270 The second affirmative defense is one of laches. The evidence fails to sustain that defense. There is no evidence that plaintiffs actually knew or could be chargeable with knowledge that anyone was using the abandoned portion of the highway, until defendant became the owner of its parcel. The defendant is a membership corporation with over 2,500 members. About the time it acquired its parcel, plaintiffs discovered some attempted use by some of its officers or members. They thereupon promptly placed a chain across the abandoned road on their parcels. When this was torn down, they had a bulldozer dump earth thereon to prevent its use. When that was interfered with by defendant, this action was promptly instituted.
The third affirmative defense is that of a prescriptive right to the use of that portion of the abandoned highway, which is on plaintiffs’ lands. The evidence fails to establish that defense. The occasional or sporadic use of the abandoned highway over the lands of plaintiffs by defendant’s predecessors in title by walking over it to go to church or on some other occasional errand and the use of it by a hunter in the darkness of the nighttime, did not constitute that open and notorious use essential to establish a prescriptive right. There is not a scintilla of evidence that plaintiffs had any actual knowledge of such use whatsoever. It must be borne in mind that during most of the period of ownership by plaintiffs, their parcel was used as a Summer residence; that at other times of the year they lived in the metropolitan area of New York City. The Stupnicki residence was at such a distance from the highway in question, as to render it virtually impossible for them to see an occasional passerby on foot. So far as the night hunter is concerned, plaintiffs could hardly be aware of such use. To me it is clear that plaintiffs had no actual knowledge of any such use and that there is no justification on the evidence for the presumption of any such knowledge by them. As already indicated, so soon as they had actual knowledge of an attempted use by defendant, they took steps to prevent it, and when such steps were of no avail, they promptly instituted this action. “ To establish an easement in the land of another by prescription or adverse use, it is essential that the use and claim of right be actually known by the person against whom the adverse user is claimed, or it must be so visible, open or notorious as that knowledge of such use or claim will be presumed.” (Treadwell v. Inslee, 120 N. Y. 458, 465.) (See, also, Panzica v. Galasso, 285 App. Div. 859, affd. 309 N. Y. 978.)
Although no such defense is pleaded, defendant argues that it has a private easement. Apparently the tracing of the title back to Robert Livingston was directed to that proposition. *271 However, this is not the situation where the owner of a tract subdivides the tract into lots and makes a map of the subdivision, on which are laid out lots and streets and then sells lots, with reference to such map. In such a case, the lot purchasers, of course, have a private easement, over the streets shown on such map, whether such streets are ever dedicated or not and whether improved or not. The grantees of such a common grantor do have a private easement by grant or implication. This is not the ease here. The fact that ownership of the respective parcels can be traced back for many years to the one owner of an immense parcel of land, out of which the parcels of the parties hereto were ultimately carved, does not bring this case within the doctrine of an easement by grant or implication, as in the case of the owner of a tract who subdivides it into lots, shown on a map, with streets, etc. and then sells the lots to various parties, who buy in reliance thereon. The terms c ‘ common grantor ” and “ common source of title ” are not synonymous.
I find and conclude that defendant and its predecessors had no private easement over that portion of the abandoned town highway, which was within the bounds of plaintiffs’ lands; that such predecessors in title had only the easement of the general public over same until the town officers filed their certificate pursuant to section 205 of the Highway Law, at which time the public easement terminated and such termination is final, unless and until, successfully attacked in an appropriate action or proceeding against the town officials; that neither laches nor an easement by prescription has been established; that each of the parties, or their predecessors, became the owners of those portions of the abandoned highway which had bisected their respective properties, free from the public easement over the same.
In connection with the latter statement, the following quotation from the memorandum opinion of Mr. Justice Elswobth in determining this action upon the first trial is quite apropos:
“ There are two general classifications of public highways, viz., those in which the public has only an easement for road purposes, and those where the fee belongs to the public. No proof has been adduced here of fee ownership in the public, nor is such a claim advanced. At the time of this abandonment, therefore, an easement in favor of the public was all that existed.
“ It is the rule that where an easement only exists in the public that upon abandonment the fee is presumptively in the owners of the adjoining land. This is true at least until proof to the contrary has been offered. (Swezey v. Berry, 143 Misc. 372, 374.) See, also, Gerard, New York Beal Property (Sixth *272 Edition, Vol. 3, p. 2277) where it is stated: ‘ The legal presumption * * * as respects a highway or road is that one who owns both sides of a highway is presumed entitled to the fee of the road, subject to the public easement. Upon discontinuance of a road, therefore, the fee is not in the public, but presumptively in the owners of the adjoining land, until proof is made showing ownership. ’ No proof of other ownership has been offered in this case. The lands within a highway reverting upon abandonment are ‘ free from the public easement. ’ (Mangam v. Village of Sing Sing, 26 App. Div. 464, 467.)
“ It follows that upon the abandonment here taking place the fee of so much of the discontinued road situate within the bounds of Rockefeller reverted to him as owner and the fee of so much of the discontinued road situate within the bounds of Skiba passed to him as owner. Each of such reversion ownerships was distinct and several. In the absence of then existing or later created easements — none of which are found to exist here — the then owners and their subsequent grantees were and are entitled to undisturbed and unmolested use of their respective portions of the highway.”
Equitable considerations favor plaintiffs. That the more than 2,500 members of defendant could traverse the portion of the abandoned highway on the lands of plaintiffs either on foot or in vehicles would obviously create an intolerable condition. It is true that “ equity must follow the law” and, accordingly, that, if defendant has the legal right to use the abandoned portion of the town road on the property of plaintiffs, equitable consideration could not destroy such legal right. However, I am convinced that both law and equity are on the side of plaintiffs. Plaintiffs are entitled to the injunctive relief sought.