Henry W. Lengyel, J.
The claimants contend that the State of Hew York appropriated a portion of their land pursuant to section 1-0503 of the Conservation Law. The map and description were filed in the Greene County Clerk’s office on February 10, 1966. As the State took the position that the said easement followed the bed of an existing town road, personal service of said appropriation map was not made on the claimants.
It was stipulated at the commencement of the trial that the court should determine whether or not the claimants had a compensable interest in the land to which the easement had been applied; and, that evidence relative to market value and damages would not be presented to the court until and unless the question of compensable interest had been determined in claimants’ favor.
It was not disputed that the Bast Jewett-Maplecrest Road had been in existence as a town road since the 1850’s. However, it was the claimants’ position that said road had been abandoned more than six years prior to the appropriation of February 10, 1966; and, as claimants owned the fee on both sides of said town road, that the bed of said town road has reverted to the fee ownership of the claimants herein in the area where it crossed claimants ’ land.
The permanent easement applied to said town road was 1 ‘ for travel by the public on foot, snowshoes, skis and horseback.” We shall use the phrase “ town road ” for ease of description.
Subject property was generally mountainous in character and fairly heavily wooded. When the town road was in use, it traversed a route from County Highway 40 to County Highway 23 C. These two county highways directly connected with one another, so that it was not necessary to travel said town road *477 to make such connection. The Barnum residence was located near the northwest end of said town road and the Chodakowski residence was located near the southeast end of said town road. The road at the northwest end was locally known as the Barnum Road and at the southeast end as the Shad Road.
Mr. William Maben, Town Highway Superintendent since January 1, 1958, was not familiar with said town road. He stated that insofar as his highway department was concerned there was no town road at this location. He could not find a record of any work on said road since the early 1940’s; and, he personally knew there had been no work on said town road during his tenure in office. He stated there was a maintained town road which ended at the Barnum residence and another town road which ended at the Chodakowski residence. Dead-end signs were installed at each of these residences in 1961 and 1962. The County Highway Map indicates the dead-ending of the Barnum and Shad town roads.
On February 9, 1954, the Town Board voted to “ temporarily abandon ” three town roads, one of which being the town road from the “Elmer Barnum Residence to Joseph Chodakowski Residence.” On May 15,1959, the Town Board passed a resolution which provided that the words temporarily abandoned should be amended to read “qualified abandonment.” The latter resolution was an apparent attempt to comply with section 205 of the Highway Law. As the required notices, public hearings, etc. were not performed, said resolutions were undoubtedly a legal nullity and did not accomplish anything. It is possible, of course, that, if an article 78 proceeding had been brought to set aside the qualified abandonment, it might have been denied on the ground of laches; or, on the ground that to require this town to reconstruct a road on a public easement, which had essentially reverted to nature, would work an unnecessary financial hardship on said town; and, as no householder resided on the abandoned section of the road, would compel the town to perform an idle and useless act. (See Matter of Salisbury v. Rogers, 252 App. Div. 223.) In any event, said resolutions do demonstrate the Town Board members’ thoughts as to the use and usability of said town road in 1954 and 1959. The town did accept State aid for said town road up to 1961 when such aid was discontinued. Having worked with several towns as a Town Attorney, I am not too surprised by the latter fact and do not attach any significance to it as it might relate to a nonabandonment of said road.
Mr. Hallenbeck produced photographs taken in 1967 which graphically demonstrated the condition of this town road. *478 There were trees, at least several inches in diameter growing in the roadbed. Brush and smaller trees were in the roadbed and fallen tree trunks were across the road. There was a three-strand barbwire fence across the roadbed where the Barnum section of the road turned sharply south into the iShad section. If one examines Exhibit “ 9 ” closely, one can observe that one of the trees to which the wire had been fastened had grown around the wire. Such does not happen overnight. Mr. Hallenbeck stated there were five places on his land and six places on other lands, all between the Barnum and Chodakowski .residences, where the road had been washed out and was impassable. He observed one area where there was a creek bed and a 3.5-foot-high waterfall across the roadbed. In the rainy season, he had observed water running down the roadbed in a stream four or five feet wide and a foot deep. From the photographs, it was easily determined there were rocks and small boulders in the roadbed.
Mr. Benucchi, a State witness, operated a dude ranch from 1946 to 1952 and a children’s ranch from 1952 to date in this area. He stated that his guests used to ride over this road as did he. This witness ’ avidity to assist the State prove its point that said town road had not been abandoned was very noticeable to the court. He did admit, on cross-examination, that a rider would have to detour from one side of the road to the other and at times would have to leave the roadbed to proceed.
Mr. Hallenbeck had observed some horseback riders on the town road and, in his opinion, there were about four places on his property where the road could not be traversed by ordinary riders on commercial horses. He had seen some riders dismount and lead their horses down onto his land then proceed off his property over the private road he had built to his camp. He also saw some hikers on the road after 1964, when the State put up trail markers and cut off some of the brush.
Generally, the discontinuance, vacation, or abandonment of a highway can occur only through strict compliance with the provisions of the Highway Law. However, section 205 of the Highway Law provides for absolute abandonment in the instance where the abandonment is not established through the actions of a governmental body upon notice to the abutting owners. Said statute states in part: ‘ ‘ every highway that shall not have been traveled or used as a highway for six years, shall cease to be a highway, and every public right of way that shall not have been used for said period shall be deemed abandoned as a right-of-way.” As noted in People ex rel. De Groat v. Marlette (41 Misc. 151, affd. 94 App. Div. 592, 594): “ Under *479 the express terms of the law, when a highway has not been traveled or used as such for six years it ceases to be a highway. It ceases to be a highway by virture of the law and not because of any act which the commissioner may perform under the law.” (See, also, Barnes v. Midland R. R. Term. Co., 218 N. Y. 91, 98; Dotsko v. Littlejohn, 31 A D 2d 245; Raynor v. Syracuse Univ., 35 Misc. 83, 93; Rinaldo v. State of New York, 32 Misc 2d 1016, 1017.) The burden of proving the abandonment of a highway rests upon the party who asserts it. (Horey v. Village of Haverstraw, 124 N. Y. 273, 276; Smith v. Town of Sandy Creek, 12 Misc 2d 916, 920, affd. without opinion, 8 A D 2d 688, mot. for lv. to app. den. 8 A D 2d 757.) Such is not a light burden for 1 ‘ "When a highway is once shown to exist, it is presumed to continue until it is shown to exist no longer. (Beckwith v. Whalen, 65 N. Y. 322.) The presumption is in favor of continuance, not of cessation.” (City of Cohoes v. Delaware & Hudson Canal Co., 134 N. Y. 397, 407; see, also, Matter of Scheibel v. O’Brien, 230 N. Y. 277, 281.) The statute, section 205 of the Highway Law, does not define what is meant by ££ traveled or used as a highway for six years ”. It does provide, however, some criteria in that the town officials may not move to qualifiedly abandon a highway if it has been used by ‘£ more than two vehicles daily, in addition to pedestrians and persons on horseback ”. It was not necessary for the claimants to prove that this town highway was abandoned over its entire length. (Barnes v. Midland R. R. Term. Co., 218 N. Y. 91, 99; Mangam v. Village of Sing Sing, 11 App. Div. 212, 215; Matter of Schuyler v. Town of Angelica, 137 Misc. 190, 196, affd. without opinion 232 App. Div. 718; Matter of Avoca Soil Improvement Co., v. Wilber, 137 Misc. 827, 828.) However, it was essential that claimants prove the width of the highway was so obstructed as to prevent the line of travel thereon. As stated in Barnes v. Midland R. R. Term. Co. (supra, p. 98): ££ Obstructions of a highway across part of its width only, narrowing but not closing the line of travel, are not sufficient, however long continued, to put an end to its existence (Mangam v. Village of Sing Sing, 26 App. Div. 464; affd. on opinion below, 164 N. Y. 560). To have that effect the obstruction must cover the entire width.”
Claimants have proved that very probably since 1922, almost certainly since 1938 and certainly since 1948, there has not been any vehicular travel on this town highway. Claimants have proved that there were no persons serviced by this town highway except at its northwest and southeast termini; and, that those residences were serviced by the existing used and *480 maintained termini of said highway. Claimants have proved that there were washouts, a fence, stones and boulders, springs and reservoirs, brush and sizeable trees within the highway boundaries which prevent its use for travel in any logical, sensible, and equitable understanding of the statutory requirement for travel or use as a highway. In opposition, the State presented a witness who, to our observation, did not appear unbiased and disinterested, who implied that there was substantial use of the highway by horseback riders. We do not accept that a substantial use by horseback riders was proved. We do find that some horseback riders traversed this road; but, we also find that, in areas between these termini, they had to leave the highway and go upon privately owned land to proceed. We also find there was a sporadic use by hikers on this road, especially after the State put up trail signs leading hikers to the road. However, we do not find that such sporadic use militates against a finding that this town highway was effectively abandoned for more than six years before February 10, 1966. We so find. As stated in Town of Leray v. New York Cent. R. R. Co., (226 N. Y. 109, 113): “ We have held that an unobstructed sidewalk may preserve a highway, though vehicles are barred * * *. But travel in such cases proceeded along defined and constant lines. The pathway was narrowed, but it was used as streets are used. That is not the situation here. There may have been a use, but not a use 1 as a highway.’ * * * Use ‘ as a highway ’ involves something more. Travel must proceed, in forms reasonably normal, along the lines of an existing street (City of New Rochelle v. New Rochelle Coal & Lumber Co., 224 N. Y. 696; * * * ).” (See, also, Van Epps v. State of New York, 19 A D 2d 854, 855; Kyser v. New York Cent. R. R. Co., 211 App. Div. 500, 502; Townsend v. Bishop, 61 App. Div. 18, 21; Swezey v. Berry, 143 Misc. 372, 374.) The State placed substantial emphasis on Smith v. Town of Sandy Creek (12 Misc 2d 916, 920, affd. without opinion 8 A D 2d 688, mot. for lv. to app. den. 8 A D 2d 757, supra) as supporting its position. However, the factual proof in that case, as to continued user and travel, and the reason for the public use, take it well outside the scope of the evidence presented in this claim.
We find that the portion of said town highway which ran through claimants’ land was abandoned as contemplated by section 205 of the Highway Law. In the absence of proof that claimants’ predecessors in title reserved the right of reversion upon abandonment, title to the center of the highway reverts to the abutting owners. As claimants owned the fee to the abutting property both north and south of the town highway, *481 the land in said abandoned highway reverts to the claimants’ fee ownership. (See Stupnicki v. Southern N. Y. Fish & Game Assn., 41 Misc 2d 266, 271, affd. 19 A D 2d 921; Van Epps v. State of New York, 19 A D 2d 854, 855; Watkins v. State of New York, 15 A D 2d 987.)
We reserved decision on the State’s motion to dismiss said claim. We deny said motion.