The Town of Leray, Respondent, *v.* The New York Central Railroad Company, Appellant.

**Highways — when highway discontinued by non-user under the statute (Highway Law, § 234; Cons. Laws, chap. 25).**

1. "Use as a highway," within the terms of section 234 of the Highway Law (Cons. Laws, chap. 25), which provides that "every highway that shall not have been traveled or used as a highway for six years, shall cease to be a highway, and every public right of way that shall not have been used for said period shall be deemed abandoned as a right of way," requires that travel must proceed in forms reasonably normal along the lines of an existing street.

2. In a case where a railroad company, crossing a street with its tracks, had erected a building which blocked the street on one side of its right of way, and the only question was whether the street continued to exist within the lines of the right of way, it was held that pedestrians who descended the bank, and crossed the tracks irregularly in all directions, not following the lines of the ancient street, did not make such a use of a highway as to preserve its existence. (Railroad Law [Cons. L. chap. 49], § 83.) (*Mangam* v. *Village of Sing Sing*, 26 App. Div. 464; 164 N. Y. 560, distinguished.)

*Town of Leray* v. *N. Y. C. R. R. Co.*, 177 App. Div. 944, reversed.

(Argued March 3, 1919; decided March 21, 1919.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 10, 1917, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis E. Cullen* for appellant.   The opening of Pearl street west of defendant's east line and the travel over it, all in the manner described in the evidence, do not constitute a dedication and acceptance thereof as a public highway, and conclusions of law and findings of fact, so far as they find that Pearl street, so called, was worked and used as a public highway, were errors of law.   (*Lords* v. *Atkin*, 138 N. Y. 184; *Child* v. *Chappel*, 9 N. Y. 246; *Bissel* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Harriman* v. *Hose*, 78 Hun, 280; *Trustees of Jordan* v. *Otis*, 37 Barb. 50; *City of Oswego* v. *Oswego Canal Co.*, 6 N. Y. 259; *Flack* v. *Green Island*, 122 N. Y. 107; *People* v. *Underhill*, 144 N. Y. 316; *Holdane* v. *Trustees, etc.*, 21 N. Y. 474; *Niagara Falls S. P. Co.* v. *Bachman*, 66 N. Y. 261; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 68 App. Div. 488; 178 N. Y. 561; *Niagara Falls* v. *N. Y. C. R. R. Co.*, 41 App. Div. 93, 104; 168 N. Y. 610.)   Even if the opening of Pearl street from the defendant's east line to Leray street and the travel thereon by the public constituted it a public highway, that portion of it westerly of the east line of defendant's property long since lost its character as a public highway.   (*Townsend* v. *Bishop*, 61 App. Div. 18; *Excelsior Brick Co.* v. *Haverstraw*, 142 N. Y. 146; *Buffalo* v. *D., L. & W. R. R. Co.*, 68 App. Div. 488; 178 N. Y. 561; *Horey* v. *Haverstraw*, 124 N. Y. 273; *Mangan* v. *Sing Sing*, 26 App. Div. 464; *Lyon* v. *Munson*, 2 Cow. 426; *Christy* v. *Newton*, 60 Barb. 332; *Raynor* v. *Syracuse University*, 38 App. Div. 83; *Spier* v. *New Utrecht*, 121 N. Y. 420; *New York Central R. R. Co.* v. *Village of Ossining*, 141 App. Div. 765; 207 N. Y. 648; *Concklin* v. *New York Central R. R. Co.*, 149 App. Div. 739; 207 N. Y. 752; *Lehigh & H. R. Co.* v. *Village of Warwick*, 78 Misc. Rep. 1; *Keller* v. *Erie R. R. Co.*, 183 N. Y. 67.)

*Fred B. Pitcher* for respondent.   Pearl street was a public highway throughout its entire length at the time

1919.]    Opinion, per CARDOZO, J.    [226 N. Y.]

the railroad was built. (L. 1817, ch. 32, § 3; Highway Law, § 209; *James* v. *Sammis,* 132 N. Y. 239; *Higgins* v. *Tallmadge,* 11 Barb. 457; *Gould* v. *Glass,* 19 Barb. 179; *Devenpeck* v. *Lambert,* 44 Barb. 596; *Holdane* v. *Trustees, etc.,* 21 N. Y. 474; *Spier* v. *Town of New Utrecht,* 121 N. Y. 420; *Lewis* v. *N. Y., L. E. & W. R. R.,* 123 N. Y. 497; *People* v. *Osborn,* 84 Hun, 441; *Harlow* v. *Humiston,* 6 Cow. 189.) Pearl street was never abandoned as a public highway. (*Driggs* v. *Phillips,* 103 N. Y. 77; *Horey* v. *Village of Haverstraw,* 124 N. Y. 273; *City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 397; *City of Buffalo* v. *D., L. & W. R. R. Co.,* 190 N. Y. 84; *Vandemark* v. *Porter,* 40 Hun, 397; *Beckwith* v. *Whalen,* 70 N. Y. 430; *Lyon* v. *Munson,* 2 Cow. 426; 3 Kent's Com. 432; *Reg.* v. *Saintiff,* 6 Mod. 255; *Boston & Albany R. R. Co.* v. *City of Boston,* 140 Mass. 87; *Poole* v. *Huskinson,* 11 M. & W. 827; *Hemphill* v. *City of Boston,* 8 Cush. 195, 198.)

CARDOZO, J. This is an action for an injunction to restrain the obstruction of a highway.

Early in the nineteenth century, Pearl street in the village of Evans Mills was opened to public travel. Its course lay east and west. The right of way of the Potsdam and Watertown Railroad Company, the defendant's predecessor, was acquired in 1854, and the tracks, running north and south, crossed Pearl street at right angles. At first, there was no interference with public travel. The railroad, in building its roadbed, lowered the grade two or three feet, but planks were laid between the rails, and a wooden bridge supplied a means of descent from the roadway to the grade. In 1870, there was a change. On the west side of the tracks, the defendant built a freight house, which spanned the street from side to side, and barred travel to the west. The crossing remained, but there was no highway beyond. In 1891, there was another change. The defendant tore

up the planks between the rails, and demolished the bridge. Since then, the crossing has been impassable or substantially impassable for vehicles or teams. If any use continued, it was by pedestrians only. A few feet north of the freight house is the railroad station, and back of the station are stores and a hotel. Pedestrians passing through Pearl street continued to. cut across the tracks to reach those points of destination. In doing .so they made a beaten pathway down the bank. After descending to the tracks, they followed no defined course. Some went straight across, and then along the tracks to the side. Others, and probably most, crossed the tracks diagonally, and thus to the station or beyond. All exposed themselves to the risk of injury from passing trains. In 1909, the defendant, anxious to avert this danger, built a wire fence across Pearl street along the easterly side of its right of way. The plaintiff complains of that obstruction. The trial judge permitted the defendant to bar the approach of vehicles, but required it to construct a gate or opening for the convenience of pedestrians. The Appellate Division affirmed by a divided court.

We think that Pearl street has been discontinued as a highway between the lines of the defendant's roadway. Section 234 of the Highway Law (Consol. Laws, chap. 25) provides that " every highway that shall not have been traveled or used as a highway for six years, shall cease to be a highway, and every public right of way that shall not have been used for said period shall be deemed abandoned as a right of way." There has been no travel to the west of the tracks since 1870. ˙ That has been made impossible by the construction of the freight house. Indeed, the trial judge has found that from that point to the west, the highway has been extinguished. The only question is whether there has been any use as a highway of the space between the tracks. It is admitted that since 1891, there has been no such use by

teams or vehicles. The planks between the rails, and the bridge that supplied a means of descent from the street to the lowered grade, have been removed, and all the visible tokens of a highway crossing have been destroyed. Pedestrians, it is true, have continued to cross the tracks at times, but we think they have done nothing that will keep the highway alive. They have not followed the lines of the ancient street. They have climbed down the bank and then scattered in all directions. We have held that an unobstructed sidewalk may preserve a highway, though vehicles are barred (*Mangam* v. *Village of Sing Sing*, 26 App. Div. 464, 467; affd., on opinion below, 164 N. Y. 560). But travel in such cases proceeded along defined and constant lines. The pathway was narrowed, but it was used as streets are used. That is not the situation here. There may have been a use, but not a use " as a highway." If a pole or a fence had been placed across the road, pedestrians might have clambered under or over, and made their way to the tracks. Use " as a highway " involves something more. Travel must proceed, in forms reasonably normal, along the lines of an existing street (*City of New Rochelle* v. *New Rochelle Coal & Lumber Co.*, 224 N. Y. 696; *Barnes* v. *Midland R. R. Terminal Co.*, 218 N. Y. 91, 98, and cases there cited).

That there was no such travel here is plain. It becomes still plainer when we recall the provisions of section 83 of the Railroad Law (Consol. Laws, chap. 49). That section provides that " no person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same." It could not be *necessary* to cross these tracks, for after crossing them the traveler could not go anywhere without walking along the tracks,

and thereby breaking the law. That situation has continued since 1891. Since that time at least, travel at the crossing has been irrespective of highway lines and for purposes that have no relation to legitimate highway uses. With the wisdom of the rule laid down in section 234 of the Highway Law we have no concern. The rule is there, and we must enforce it sensibly and fairly.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.