J. Irwin Shapiro, J.
After the plaintiffs had rested, the defendants New York City Transit Authority (Transit Authority) and the City of New York (City) moved to dismiss the plaintiffs’ complaint. Decision was reserved on their motions. They then rested and renewed their motions. Decision was again reserved.
The jury found a verdict in favor of the infant plaintiff in the sum of $30,000 and in favor of his mother for $12,500 against both defendants. Decision was reserved on their respective motions to set the verdicts aside, to dismiss the complaint and for directed verdicts in their favor.
Since the defendants rested on plaintiffs’ case, the only evidence in the record is that adduced on behalf of the plaintiffs. The jury having found for the plaintiffs, I will, in stating the facts set them forth in the best possible light for the plaintiffs. *572 (Brockport-Holley Water Co. v. Village of Brockport, 203 N. Y. 399, 403; Webster v. Kellogg Co., 168 App. Div. 443, 446; Stein v. Palisi, 308 N. Y. 293, 294; Sagorsky v. Malyon, 307 N. Y. 584, 586.)
The accident happened on September 7, 1958. At that time, and for a long time prior thereto, the defendant Transit Authority operated upon an embankment, as part of the BMT subway system, an electrically operated railroad, known as the Brighton line.
As part of the equipment of said railroad the defendant Transit Authority maintained upon its right of way, alongside and parallel to the tracks, certain highly charged electric third rails, which were used to supply operating current to the trains running on the tracks.
Along the westerly side of the railroad right of way there was a wire mesh fence maintained by the defendant Transit Authority. This fence was about 6 feet high over its entire length except that on one portion thereof, where it was the contention of the plaintiffs that persons had frequently climbed over the fence, it was bent over so that at that point it was only 5 feet from the ground.
Along the westerly side of this railroad right of way, there was a pathway approximately 5 feet wide and next to the pathway and alongside of it was a public park and playground owned and operated by the defendant City with a number of softball fields and handball courts thereon.
Along the easterly side of this playground and adjacent to the pathway was a wire fence with an access gate which for a long period of time was out of repair. By reason of its condition the gate could not be closed and therefore necessarily remained open at all times.
At the time of the accident, and for a long time prior thereto, it was the practice, when a ball was hit or thrown over and upon the railroad right of way, for a boy — usually the outfielder— in order to retrieve the ball, to leave his playground and enter the adjoining playground through an aperture in the wall between them, then go through the afore-mentioned open access gate, cross the five-foot pathway, and climb up and over the wire fence, at its five-foot-high point, and then ascend the embankment to wherever the ball was on the railroad right of way.*
*573 At the time of the accident the infant plaintiff was 11 years and 8 months of age. A softball game was in progress and he was one of the outfielders. The ball was hit over the fence and onto the tracks. He was urged by others in the game, including his adult brother, to get the ball. In an attempt to retrieve it, he entered the adjoining playground, walked through the open access gate, crossed the five-foot pathway, climbed the wire mesh gate at its five-foot point, walked up the embankment, and walked on and over some of the tracks. He picked up the ball and as he was attempting to return he heard a train coming, got frightened, started to run, tripped on some stones, and stumbled and landed with his chest on the third rail sustaining injuries, maiming in nature, and the burns from which covered more than 20% of the skin surface of his body.
Upon these facts, the jury had a right to find: (1) that the defendant Transit Authority maintained and operated upon its railroad right of way high voltage electric third rails; (2) that in the immediate vicinity of and close to said railroad property, there was a public playground owned and maintained by the defendant City in which the gate leading toward said railroad property was, and had been for many years, broken and so far in a state of disrepair that it had not been and in its then condition could not be closed; (3) that children were invited by the City to and did play the game of softball upon the baseball fields in said playground and in connection with playing the game did bat and throw balls; (4) that batted balls in the course of play would on occasion come over and upon the railroad property and tracks; (5) that a wire-mesh fence along the border on the side of the railroad property, at a point approximately opposite to the said broken gate, was, and for many years had been, bent so that while the rest of the wire-mesh fence extended six feet above the ground, at the point where it was bent it was only five feet above the ground; (6) that for a long period of time prior to the accident to the infant plaintiff, children climbed over the wire fence, and walked up the embankment and over and across the tracks in order to retrieve batted balls.
The question therefore is whether such findings spell out a cause of action in negligence against either or both defendants.
Concededly the infant plaintiff was both a statutory and common-law trespasser upon the railroad right of way. The contention of the plaintiffs, however, is that being constructively aware of the proximity of the playground and of what children playing in the playground were doing with reference to batted balls, the defendant Transit Authority in the exercise of reasonable care and prudence was duty bound to take steps to prevent *574 children from climbing over the wire fence and onto and upon the railroad property and tracks and that the defendant City was negligent in having an opening in its playground fence — the gate — which led directly to the five-foot path and which path in turn bordered the railroad right of way.
The danger inherent to children in permitting such a practice, say the plaintiffs, was readily foreseeable and therefore there is liability for not preventing the continuance of that practice when injury resulted therefrom, as it did in this case.
As I read the cases they do not sustain the plaintiffs’ contention. Giving full credence to all of the factual findings necessarily encompassed within the jury’s verdict, all that can be said in this case is that the defendant Transit Authority was aware of the fact that from time to time batted balls were hit onto its tracks and that to retrieve them boys who were using the playground climbed over the fence and went onto its right of way, and that so far as the defendant City was concerned that it had knowledge of that fact and permitted the infant plaintiff, and others before him, to leave the playground by way of an open gate, to walk across the five-foot pathway, and to climb over the wire fence onto the defendant Transit Authority’s right of way. Such findings in my opinion do not create liability upon either defendant.
Section 83 of the Railroad Law provides in part: “ No person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same.”
Subdivision 4 of section 1990 of the Penal Law makes it a misdemeanor for anyone, not connected with or employed on the railroad, to walk upon or along any railroad track or tracks, or right of way, except where and when necessary to cross the track or tracks or right of way where they shall be laid across or along streets or highways.
Even in a case, where a railroad company erects a fence on one side of its right of way, and the fence blocks the street so that a pedestrian after crossing the tracks cannot go anywhere without walking along the tracks, it has been held to be a violation of these sections for any person not connected with the railroad to cross the tracks (Town of Leray v. New York Cent. R. R. Co., 226 N. Y. 109).
There is of course no claim here that the infant plaintiff was employed by, or connected with the railroad, or that the tracks *575 were laid across or along streets or highways, or that it was necessary for him to cross the tracks for any lawful purpose.
The Court of Appeals has held that a plaintiff who violates these statutes is a trespasser and that a railroad defendant, under such circumstances, is under no obligation to compensate him for his injuries (Keller v. Erie R. R. Co., 183 N. Y. 67; Gleason v. Central New England Ry. Co., 261 N. Y. 333).
In Keller (supra) the action was brought to recover damages from the defendant for having negligently caused the death of the plaintiff’s intestate. The negligence alleged was that, while the deceased was lawfully and rightfully upon the defendant’s railroad tracks, one of its trains, through carelessness in operation, came into collision with him.
The plaintiff recovered a verdict against the defendant at the Trial Term, but upon appeal to the Appellate Division the judgment entered upon the verdict was reversed and a new trial was ordered, the reversal being upon questions of law only. The plaintiff thereupon appealed to the Court of Appeals under a stipulation for judgment absolute.
The Appellate Division’s reversal was based upon a consideration of the evidence which in its opinion conclusively proved the deceased to have been guilty of contributory negligence as a matter of law. The Court of Appeals after fin ding that the Appellate Division was correct as a matter of law in its conclusion with respect to the deceased’s contributory negligence then said (pp. 71-73):
“We would be satisfied to affirm the order of reversal, without further opinion, were it not that another ground, upon which the plaintiff should have failed in his action, has been negatived in the opinion below. It was considered, as ‘ the use of the defendant’s tracks at this point by pedestrians had been so general, notorious and long continued, that the defendant can fairly be said to have acquiesced in that use ’ and that persons, who had been in the habit of making use of its tracks, stood towards it in the character of licensees; to whom the duty ivas owing of giving warning of the approach of trains at that point. This, in my judgment, was distinctly erroneous. I think that it was not within the power of the defendant to permit, or to suffer, persons, not in its employment, to walk upon and along its tracks at a place where there was no highway and but an intersection of railroad tracks, and that no length of acquiescence in their doing so, under the circumstances of this case, could create a right of user, by license, or by sufferance. This ought to be clear from section 53 of the Railroad Law, (Laws of 1892, ch. 676), which was intended to protect the traveling public, *576 as well as the railroad companies. It reads that ‘ no person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same. ’ It is not easy, if at all possible, to see how any right, as by license, could be acquired through acquiescence to do something which was so clearly in violation of the statutory inhibition. An act expressly prohibited by the public statute is, in its inception and always must continue to be, unlawful. The defendant’s powers and capacity to act are defined and controlled by statute law and, as a creature of statute, it could, neither expressly, nor passively, confer a right which the statute denies. Whoever walks upon, or along, the tracks of a railroad, except when necessary to cross the same upon some street, highway, or public place, violates the law and is like a trespasser, and the company’s servants are under no other obligation than to refrain from willfully, or recklessly, injuring him.
“ The case falls within the precise inhibition of the Railroad Law; because, at the point where the accident happened, there was neither street, nor highway, justifying the use of the tracks for a crossing. As it has been shown, the use was merely for convenience in making a short cut between the streets and the traveling of the public was from railroad track to railroad track. Even in cases where persons were killed, or injured, while merely crossing railroad tracks, and where, by reason of the situation and from the force of circumstances, a license to cross was deemed to be implied, it has been held that they took the risks incident thereto and of the dangers, to which they might be exposed from the management of the road in the usual and ordinary way, and that no other duty rested upon the railroad company than not to intentionally, or wantonly, injure them. (See Nicholson v. Erie Railway Co., 41 N. Y. 525; Sutton v. N. Y. C. & H. R. R. R. Co., 66 ib. 243; Gunther v. N. Y. C. & H. R. R. R. Co., 81 App. Div. 606; Lagerman v. N. Y. C. & H. R. R. R. Co., 53 ib. 283.) The cases of Barry and Byrne v. N. Y. C. & H. R. R. R. Co. (92 N. Y. 289; 104 ib. 362), are not in point; because the persons injured were crossing the tracks at points where it was conceded that there was a right of way, or an alley, or public passageway, by reason whereof it was incumbent upon the railroad company to exercise reasonable care in the movement of its trains. # *
1 ‘ For the reasons which have been given, the order appealed from should be affirmed and judgment absolute should be *577 awarded to the defendant, upon the plaintiff’s stipulation; with costs in all the courts.” (Emphasis supplied.)
In an effort to get away from the devastating effect of the holding in the Keller case the plaintiffs say in their brief “ certain early cases — such as Keller v. Erie R. R. Co. (183 N. Y. 67 [1905]) adhere strictly to the rigid anti-trespasser doctrine of an earlier day — they do not reflect the changes and progress (hereinabove set forth) now recognized and enforced.”
The trouble with that contention is that in the Gleason case, the Court of Appeals approved the holding in the Keller case to the effect that the applicable railroad statute and the Penal Law barred a cause of action in negligence by one who crosses railroad tracks unlawfully. Thus in Gleason (261 N. Y. 333, 335-336) after citing the Keller case, and others, the court said:

“ These cases go so far as to hold that a railroad cannot by contract, express or implied, or by invitation or by acquiescence, give a person, not in its employ, going on its right of way any rights beyond those of a mere trespasser.

‘‘ The decisions rest on the rule that ‘ it was not within the power of the defendant to permit, or to suffer, persons, not in its employment, to walk upon and along its tracks at a place where there was no highway and but an intersection of railroad tracks, and that no length of acquiescence in their doing so, under the circumstances of this case, could create a right of user, by license, or by sufferance. This ought to be clear from section 53 of the Railroad Law (Laws of 1892, ch. 676), which was intended to protect the traveling public, as well as the railroad companies. It reads that ‘ no person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same.’ It is not easy, if at all possible, to see how any right, as by license, could be acquired through acquiescence to do something which was so clearly in violation of the statutory inhibition. An act expressly prohibited by the public statute is, in its inception and always must continue to be, unlawful. The defendant’s powers and capacity to act are defined and controlled by statute law and, as a creature of statute, it could, neither expressly, nor passively, confer a right which the statute denies. Whoever walks upon, or along, the tracks of a railroad, except ■ when necessary to cross the same upon some street, highway, or public place, violates the law and is like a trespasser, and the company’s servants are under no other obligation than to refrain from wilfully, or recklessly, injuring him.’ *578 (Keller v. Erie RR. Co., supra, pp. 71-72) ”. (Emphasis supplied.)
Cases such as Lamphear v. New York Cent. & Hudson Riv. R. R. Co. (194 N. Y. 172); Danna v. Staten Is. R. T. Ry. Co. (252 App. Div. 776, affd. 277 N. Y. 714) and Skzypek v. Long Is. R. R. Co. (245 App. Div. 309, 249 App. Div. 629, affd. 275 N. Y. 508) where recovery was permitted, in spite of the statutes cited in the Keller and Gleason cases (supra) are clearly distinguishable for in those cases the defendant railroad had in fact authorized, if indeed it had not invited, the use of its property as a road or a pathway.
In Skzypek (245 App. Div. 309, 310-311, supra) the Appellate Division succinctly pointed out the difference between the two situations. It said:
“ The complaint should not have been dismissed. (Lamphear v. N. Y. C. & H. R. R. R. Co., 194 N. Y. 172, where the facts are practically the same as those here presented.) In that case it appears deceased was struck by a train and killed while attempting to cross defendant’s tracks at a point where there was neither street nor highway, but only a footpath leading from one side to the other through openings in the fences. There was evidence of a constant public use of the path for many years, and defendant’s counsel conceded the fact. It was also shown that defendant had, at some time, put up turnstiles. It was conceded that for a long series of years the public, with the acquiescence, permission and consent of the railroad, had been accustomed to cross the railroad tracks at the point where the accident happened. The trial court instructed the jury that under the circumstances defendant was bound to use reasonable care to protect the persons from injury whom it so permitted to cross at that point. * * *
“ Giving to plaintiff the most favorable inferences to be drawn from the testimony, it has been proved here that a street ends at either side of defendant’s right of way, which at one time had been inclosed by a wire fence. At these street ends the fences had been broken down ten years before the accident and so remained until that unfortunate incident. During that period, at that point, the public continuously crossed defendant’s tracks to go from one side to the other. A path had been worn where they had crossed. From such open and notorious use it might be inferred by a jury that the defendant had acquiesced in and consented to the crossing by the public. Thus, as between the public and defendant, a public highway or passageway was created, and the act of deceased in crossing was within the exception of the act. Deceased was a licensee, and defendant *579 owed her the duty of giving a reasonable warning that her pathway led across a death-dealing third rail. There was proof that there was an absence of reasonable warning.
" Keller v. Erie Railroad Co. (183 N. Y. 67) and Gleason v. Central N. E. R. Co. (261 id. 333) are not to the contrary. In neither case does it appear that with the consent of the railroad company a public way had been created across the right of way from one side of an intersecting street to the other. ’ ’ (Emphasis supplied.)
In Danna (252 App. Div. 776, supra) we again have a case where the plaintiff was not a trespasser. The infant plaintiff there was walking on a path or roadway which ran parallel with and close to the railroad tracks and the third rail. He was bouncing a rubber ball which bounced under the third rail and in reaching to get the ball while still standing on the roadivay his hand touched the third rail and he was badly burned.
The Appellate Division, Second Department, reversed the judgment dismissing the complaint saying: “ The proximity of the third rail to the passageway in question, together Avith the other circumstances disclosed, inclusive of the tender age of the infant, presented a question of fact, at least, as to the negligence of the defendant. ’ ’
A reading of the record on appeal in that case reveals that the defendant sought to escape liability to the infant plaintiff upon the theory that he was a trespasser. The Appellate Division disposed of that contention by holding that the defendant railroad company had by acquiescence over a long period of time permitted the place where the infant plaintiff was Avalking to be and become in fact a roadway. Having made such a factual finding, the only remaining question then was whether the maintenance of an unguarded third rail in close proximity to what the defendant company had recognized and permitted to be used as a highway, so that a pedestrian could reach and inadvertently touch the live third rail, constituted a menace to persons lawfully using the highway. The Appellate Division in sustaining plaintiffs’ recovery held that the railroad company, in maintaining a highAvay so close to its tracks, obligated itself to and did assume the duty of reasonable care to prevent injury to persons whom it had invited to use the highway.
In our case it cannot be contended that the defendant Transit Authority invited the infant plaintiff to leave the playground, exit through the open gate, walk across the five-foot pathway, climb the wire-mesh fence, climb up the embankment and then cross the tracks or that that tortuous path constituted a public highway. In contrast to the plaintiff in the Danna case who was *580 using a highway where there was a highway, the infant plaintiff in this case was utilizing the property of the defendant Transit Authority as a highway where there was no highway.
A comparison of the Danna decision with the decision in Donnelly v. Long Is. R. R. Co. (252 App. Div. 857) is most illuminating. In that case the Long Island Railroad Company maintained a freight yard in Hempstead, Long Island. There were roadways leading into the yard for the use of trucks, going to the side of freight cars for the purpose of removing their cargoes. The public, with the acquiescence of the company, had for some time used one of these roadways as a short cut to get from one part of the village to the other. On the day of the accident the Donnelly boy was walking along one of these paved roadways with others. He strayed from the roadway and got onto the tracks and was severely burned by coming in contact with an exposed third rail. The trial court gave him judgment, but the same Appellate Division which only a month earlier had decided that there was a cause of action in negligence in the Danna case, here reversed and dismissed the complaint upon the ground that when plaintiff left the roadway and went across the tracks he became a trespasser as a matter of law. The court refused to impose liability upon the railroad under the Danna rule when the plaintiff was injured while illegally crossing the tracks as distinguished from the situation where he was lawfully using a path or roadway.
In many of its feaures our case resembles Richards v. Long Is. R. R. Co. (258 App. Div. 918) where the dismissal of the infant plaintiff’s case at the close of the plaintiff’s proof was unanimously affirmed.
In that case a little boy of the age of eight years was coasting down the side of a cut toward the tracks of the defendant company on its private property. There was snow on the ground and the boys were using a large piece of tin for their sled. A hole had been broken through the wire fence enclosing the company’s property, and there was the usual testimony that the play indulged in by these boys was a matter of common occurrence, well known to the defendant company. When the tin upon which the boy was coasting reached the tracks, it came in contact 'with one of the freight cars of the defendant company in its freight yard, which was being switched from one track to another. The contention of the defendant, that the boy was a trespasser both by common law and by statute, and that it could not by any acquiescence relieve him of his status as such, was sustained. The same situation applies here. In each case the infant invaded the private property of the defendant company on a dangerous *581 adventure of his own with an untoward result that was not contributed to in any way by the defendants.
Another case in point is Ralff v. Long Is. R. R. Co. (266 App. Div. 794, affd. 292 N. Y. 656) in which the court reversed a judgment for plaintiff and dismissed the complaint.
In that case a little boy between eight and nine years of age, playing on the tracks of the defendant company, and where boys of the neighborhood had frequently played in the past, climbed up on a coal car and after the train started slipped and fell underneath the car and was injured. In that case as in this, the plaintiff went to great lengths to prove that the children in the neighborhood had been in the habit, with the acquiescence of the company, of playing on the company’s tracks and climbing upon its cars. The defendant company argued not only that no negligence was proved on the part of the defendant company, but that the infant plaintiff was a trespasser. As has been said, the judgment was reversed and the complaint dismissed. The court held: ‘1 The infant was a trespasser to whom the defendant owed no duty other than to refrain from affirmative acts of negligence, or from willfully and intentionally injuring him. ’ ’
Keeler v. Long Is. R. R. Co. (273 App. Div. 896, affd. 299 N. Y. 621) is another case in point. There plaintiff’s intestate, seven years old, proceeded westerly with a bicycle on defendant’s right of way alongside the southerly rail. Plaintiff’s intestate was with a friend, who also had a bicycle. At a certain point both boys crossed from the southerly to the northerly side of the right of way. The friend of plaintiff’s intestate crossed both rails and the third rail in safety. As plaintiff’s intestate was attempting to get across the third rail on the north side, his bicycle touched the rail, there was a flash, and he was killed.
In the action for causing his death, the trial court dismissed the complaint at the close of plaintiff’s case, holding that (1) the infant plaintiff was a trespasser on defendant’s tracks; (2) that defendant’s only obligation was to refrain from willfully or recklessly injuring the infant plaintiff; (3) that defendant may not be charged with willful or wanton conduct in permitting current to pass through the third rail, even when trains were not passing over the track, and even though it knew that for at least six years people, including children, had walked up and down the sides of the tracks and children had run onto the railroad tracks to get baseballs batted from the adjoining baseball field.
The judgment dismissing the complaint was affirmed by the Appellate Division (273 App. Div. 896) and by the Court of Appeals (299 N. Y. 621).
*582 The Keeler case was stronger for plaintiff than the one at bar because in that case there was no fence or barricade at the place where the infant entered the right of way. In the case at bar there was such a fence or barricade, but the infant plaintiff climbed over it.
Plaintiff argued on the appeal in the Keeler case, just as the present plaintiffs argue, that the fact that the railroad knew or should have known that children went on the tracks from the adjoining baseball field to retrieve balls and did nothing to prevent it made out a cause of action in negligence. The contention thus made was rejected.
Plaintiffs argue that there was a worn path from the bent-over wire fence to the west of the right of way up the embankment thus showing acquiescence by the defendant in the use of the embankment as a path. Not only was such contention rejected in the Keller, Gleason and Keeler cases (supra), but even if there were a worn path up the embankment, consent here is conclusively negatived by the fact that the tracks were enclosed by wire fences running north and south so that it was impossible for a public crossing to exist (Town of Leray v. New York Cent. R. R. Co., 226 N. Y. 209, supra).
Another analogous case is Nilsen v. Long Is. R. R. Co. (268 App. Div. 782, affd. 295 N. Y. 721). There the infant plaintiff, six years of age, was engaged with other boys in playing ball on a lot owned by defendant, adjacent to its right of way. The boy, in order to retrieve a batted ball, went down an incline and across two or more tracks of defendant to the top of a concrete abutment or wall underneath a bridge carrying a highway over the right of way, and stepped therefrom to the roof of a freight car. In order to balance himself, he grasped a live wire about two feet above the top of the car and was badly burned. A judgment for plaintiff at Trial Term was reversed and the complaint was dismissed on the ground that the boy was a trespasser and that the happening of the accident was not within the range of foreseeable anticipation on the part of the defendant even though the proof established — or so a jury could find — that for a period of years prior to the accident it was the common practice of children using the playground to go upon the freight yard portion of the premises, to play there, or to retrieve balls batted from the playground and that in doing so the children frequently stepped from the concrete wall to the top of such standing freight cars. In addition to the foregoing it also appears from a reading of the record on appeal in that case that at no time prior to the accident did the defendant maintain upon *583 its land any fences or barricades separating the playground from the freight yard. To my mind, the affirmance of the dismissal of the complaint in the Nilsen case by the Court of Appeals is controlling here.
I have heretofore in this opinion discussed some of the cases cited by the plaintiffs in an effort to sustain the verdict and have pointed out why they are inapposite here. The remaining cases cited by the plaintiffs are likewise inapplicable to the facts here.
In French v. Central N. Y. Power Co. (275 App. Div. 238), the court was dealing with the sufficiency of the complaint as a pleading. Proof was not involved.
In analyzing the complaint the court was of course required to indulge every intendment and fair inference in favor of sustaining its sufficiency (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451; Dyer v. Broadway Cent. Bank, 252 N. Y. 430) and, if necessary, to sustain its sufficiency even to assume the existence of any other facts which could reasonably be inferred from the pleaded facts (Kronenberg v. Sullivan County Steam Laundry Co., 91 N. Y. S. 2d 144).
The French case was interpreted as a pleading case by the Appellate Division, Second Department, in Runkel v. City of New York (282 App. Div. 173, 175) when it cited it as standing for the proposition “ that if there be any doubt as to a defendant’s right to a dismissal on the law plaintiff should be [permitted to be] put to his proof ”.
In apparent compliance with that rule the court (p. 239) in evaluating the complaint in the French case inferred that the electric voltage maintained by defendant on its premises ‘ ‘ was improperly and negligently protected as to immature children who played nearby and whose presence was known or should have been known to the defendant ’ ’, and held that so regarded “ the complaint is not insufficient even if the boy was a trespasser,” (Emhasis supplied.)
Here, if we disregard the infant plaintiff’s role as a statutory trespasser (Railroad Law, § 83; Penal Law, § 1990, subd. 4) and consider him merely as a common-law trespasser, the factual as distinguished from the pleading question still remains whether the third rail “ was improperly and negligently protected ” as to him. The French case is therefore neither persuasive on nor determinative of the problem before me.
In the remaining cases cited by plaintiffs where defendants were held liable, the ratio decidendi of the holdings was that there was the affirmative doing of some specific improper or illegal act — or the negative failure to cause the removal of some *584 improper or illegal condition, which were so wrongful in themselves that they could he equated with a wanton willful desire to cause harm.
For example, Mayer v. Temple Props. (307 N. Y. 559, 565) is a case where a 12-year-old hoy met his death by falling into an opening, 55 feet deep, in a platform at the rear of the defendant’s premises; the platform in question was part of a 10-foot passageway in the rear of defendant’s properties; the passageway ran the length of the block — 200 feet — and the middle 100 feet thereof were bounded by two wire-mesh gates at the north and south ends of the aforesaid platform and building on the east, and a brick wall on the west, alongside of which was a public school and school yard. There was evidence that children frequently had crawled under the wire-wesh gates and played on the platform. In the platform was a hole four feet square, used to raise and lower ash and rubbish cans. The hole was covered by two hinged steel doors, and the opening had a covering of wood. The wood “ was more or less like that of an orange crate or shipping crate ” (p. 562). While the deceased was on this covering of wood he disappeared down the hole and met his death. In sustaining the plaintiff’s recovery the court said (pp. 563, 565):
“ Here we have a dangerous instrumentality in the nature of a perilous trap affirmatively created, by defendants by knowingly placing over a hole 55 feet deep, with an opening of 8 square feet and an inside area of 16 square feet, a frail wooden covering that could not sustain the weight of this twelve-year-old boy but precipitated him to the boiler room below. Moreover, this utterly insecure covering gave a deceptive appearance of safety, was pregnant with hazard, and the direct consequences were clearly foreseeable. # * *
‘ ‘ In the state of this record, we must assume that defendants had knowledge of the ‘ common occurrence ’ of children in this congested neighborhood adjoining a public school, crawling under the gates to play, to retrieve a ball or to linger awhile, and that this practice had been followed for a long time. Despite such knowledge, the only space affording entry, through the clearance beneath the gates, was left open. Once within the gates, the platform was easily accessible to children. Under these circumstances, to cover a hole, more than half as deep as the gated passageway, with ‘ flimsy ’ pieces of wood that quickly crumbled under the feet of the infant decedent, plunging him to his death in the boiler room far beloto, constitutes an affirmative creation of a situation pregnant with the greatest danger to life or limb, and a deceptive trap to the unwary, as perilous as an *585 explosive bomb, highly inflammable material, a spring gun, ox-kindred devices. The bringing about of an inherently hazardous situation, as we had ixi this ease, is tantamount to a reckless disregard of the safety of human life equivalent to willfulness, and an utter heedlessness of care commensurate with the risk involved, the consequences of which may well have been anticipated. ’ ’ (Emphasis supplied.)
It is evident that in the Temple case (supra) the defendant’s wrong was an affirmative one. It created an appearance of safety where this “ flimsy ” wooden covering was concerned and it permitted childrexx to have access thereto.
Here, the defendant Transit Authority gave no one any assurance of safety; it did not wrongfully create a dangerous or hazardous condition; it operated its electi’ic railroad in the only way that an electric railroad can be operated, to wit, by the use of electric current and no liability to the plaintiffs can be predicated by reason of that fact. Whereas in the Temple case after affirmatively creating a deceptive appearance of safety the clearance between the gates was left opexx, in our case the Transit Authority maintaixxed a six-foot-higlx fexxce to prevent illegal access to the railroad right of way, axxd givixxg full credence to the plaintiffs’ contention that at one point it was bent, the fence would still be five feet high at that point.
In Runkel v. City of New York (282 App. Div. 173, 175, supra),* the structure adjacent to the sidewalk was “ decayed, rotted, without doors, windows or barricades and in immixxent daxxger of collapse * * * it was a nuisance as a matter of law ” and a finding had been made by the Superintendent of Buildings directed to the owner 11 calling attention to the dangerous condition of the building and requiring that the building be secured or demolished at once; and that thereafter both the owners and the city remained dormant axxd took no further action xxntil after the collapse of the building ”.
At the time the buildixxg collapsed the ixxfants were inside frolicking and were trespassers. They were buried in the debris with a resulting action being brought. In reversing a dismissal of the complaixxt, on the openiixg, the court said (pp. 176-177): “An abandoned open structure which is so rotted and dilapidated that it is in imminent danger of collapse may be said to constitute a trap or axx ‘ inherently daixgerous ’ instrumentality which is in the same class as an explosive substance, inflammable material, a live electric wire or a spring gun. Injux-y sustained by any person, even though he be a trespasser, due to such axx *586 inherently dangerous instrumentality, may be said to have been caused by the wanton or intentional or inhuman act of the one responsible for its existence or its removal and will cast him in liability, provided: (a) that care ‘commensurate with the risk involved ’ has not been taken to guard against the injury; and (b) that the accident was ‘ foreseeable ’ — as it was here because of the structure’s proximity to the public highway. (Kingsland v. Erie Co. Agricultural Soc., 298 N. Y. 409, 424; Hallenbeck v. Lone Star Cement Corp., 273 App. Div. 327, 331-332, 337, affd. 299 N. Y. 777; French v. Central New York Power Corp., 275 App. Div. 238, supra; French v. Central New York Power Corp., 277 App. Div. 1157; Beickert v. G. M. Laboratories, 242 N. Y. 168, 174; Travell v. Bannermann, 71 App. Div. 439, revd. on other grounds, 174 N. Y. 47; Carlock v. Westchester Lighting Co., 268 N. Y. 345, 350-351.) ”
The predicate for liability there was the fact that the building was unlawfully and illegally being maintained by the defendants, and it was in such a setting that the infants’ trespass on the property was not held to preclude a recovery. In our case, of course, there was nothing inherently improper or unlawful about the instrumentality, the third rail, which caused the injury to the infant plaintiff.
My difficulty in trying to find liability in this case is that I cannot figure out what the plaintiffs would have the defendant Transit Authority do. If the fence were 8-feet high or 10-feet high or 12-feet high the infant plaintiff could just as well have climbed over it, as a fair inference from his testimony makes clear. What then was the defendant Transit Authority to do? Was it supposed to have a guard constantly on duty to see that no one trespassed on its property, or was it required, in the words of my charge to the jury, to erect a “ Berlin Wall ” so that climbing over it would be made more difficult? I think the questions answer themselves and necessarily lead to the conclusion that there was here no omission of any duty by the Transit Authority which it owed to the infant plaintiff since there was nothing within reason that it could have done to prevent the injuries which he sustained.
A case such as this comes within the ambit of those cases which hold that while a landowner cannot intentionally injure or lay traps for a person coming upon his premises without permission, he is not bound to provide for the trespasser’s safety from unintentional dangers caused by the legal conduct of his business (Erie R. R. Co. v. Hilt, 247 U. S. 97, 101).
The defendant Transit Authority was under no duty to exercise active vigilance to insure the safety of the infant plaintiff. *587 Its obligation went no further than to refrain from inflicting intentional or willful injury upon him. (Morse v. Buffalo Tank Corp., 280 N. Y. 110; Ehret v. Village of Scarsdale, 269 N. Y. 198; Garthe v. Ruppert, 264 N. Y. 290; Mendelowitz v. Neisner, 258 N. Y. 181; Fox v. Warner-Quinlan Asphalt Co., 204 N. Y. 240; Ferrari v. New York Cent. R. R. Co., 224 App. Div. 182.)
The railroad here was being operated in a legal and proper manner. The third rail was necessarily used in connection with its business. To cast it in damages, under the circumstances of this case, would impose upon it a liability against which it could not protect itself. If the accident here in question could have been anticipated or expected it could, with equal reason, have been expected to occur on any street where boys play ball along the Transit Authority’s entire fenced-in right of way. Was the defendant required to have a guard on duty on every block over its entire right of way? I am convinced that unless the defendant is held to be “ fortified by the gift of prophecy ” (Adams v. Bullock, 227 N. Y. 208, 210) the exercise of the required degree of caution, if indeed there was any legally required degree of caution under the facts of this case, did not involve anticipation of the extraordinary peril which befell the infant plaintiff as a result of his own conduct.
This case is clearly distinguishable from a case like Carradine v. City of New York (16 A D 2d 928) in which a plaintiff’s judgment was upheld. There the city was held liable because ‘ ‘ it stored inflammable liquids which were inherently dangerous ’ ’ — ‘ ‘ in proximity to an area which, although officially discontinued as a playground about a month prior to the accident, was still used by children for that purpose. The door to the enclosure was open. An explosion and fire ensued when a third boy dropped a lighted match on benzine or turpentine oozing from an overturned can. That liquid and cans of paint had been stored for a long time in the enclosure, which was otherwise not in use. As a result of their burns, the Garradine boy was seriously injured and the Santiago boy died”. (Emphasis supplied.)
Said the Appellate Division: * ‘ The trial court in effect charged the jury that, even though the infants were trespassers, the defendant City of New York may be found liable upon the ground that it stored inflammable liquids which were inherently dangerous. In our opinion such charge was not erroneous. Where injury results to an infant who is a trespasser, the pertinent facts and relevant circumstances must be carefully examined in order to determine whether a jury question of foreseeability exists. In reaching that determination, the dangers incident to *588 city life and the reasonable use of property by its owner, including the nature of the trespass and of the hazard on the land, must be weighed in each case (Mendelowitz v. Neisner, 258 N. Y. 181, 185). And they should be weighed in the light of the principle: (1) that the degree of care required of a landowner is commensurate with the risk involved, the character of material on the premises and its accessibility to such children (Kingsland v. Erie County Agric. Soc., 298 N. Y. 409, 423, 424); and (2) that one who maintains an explosive substance is properly bound to the exercise of a high degree of care (Travell v. Bannerman, 174 N. Y. 47, 51). We have given due consideration to the facts in those cases where complaints of infant trespassers have been dismissed (e.g., Carbone v. Mackchil Realty Corp., 296 N. Y. 154; Olsen v. Fennia Realty Co., 246 N. Y. 641; Morse v. Buffalo Tank, Corp., 280 N. Y. 110). After such consideration, we believe that under the circumstances disclosed in the instant record, the city’s maintenance of the inflammable materials in the particular enclosure here involved was actionable within the principles as enunciated and as applied in comparatively recent cases (Mayer v. Temple Prop., 307 N. Y. 559; Collentine v. City of New York, 279 N. Y. 119; Kingsland v. Erie County Agric. Soc., 298 N. Y. 409, supra).”
The obvious basis for the determination of the Appellate Division was that the maintenance of the inflammable liquid in proximity to an enclosure where the door “was open” was both unnecessary and improper and therefore in view of its highly volatile nature an omission of duty which it owed even to a trespasser. In the case of the third rail, its existence is of course necessary to the lawful and proper operation of the railroad business and its maintenance alongside the railroad tracks is neither unlawful nor improper nor does its continued existence import any wrongdoing or any default in its obligations.
As Mr. Justice Halperx put it in an exhaustive discussion of this subject in Brzostowski v. Coca-Cola Co. (16 A D 2d 196, 200-201): “ The trap theory has been applied in favor of child trespassers as well as in favor of child licensees (Mayer v. Temple Properties, 307 N. Y. 559), but as applied to a trespasser the trap theory is given a much narrower meaning. A child trespasser can recover upon the trap theory only if a dangerous condition was maintained upon the premises with the intention of inflicting injury on anyone trespassing thereon or with what is the equivalent of intention, reckless and wanton disregard of the consequences (Mayer v. Temple Properties, supra, p. 565). But in the case of a child licensee, it is enough to show that the dangerous condition was known to the defendant, that the danger *589 was one which children were unlikely to appreciate, and that the defendant failed to warn the child licensee of the danger. (Restatement, Torts, § 342, supra.) ”
Here, of course, the infant plaintiff was a statutory as well as a common-law trespasser and the third rail was not maintained by the Transit Authority 1 ‘ with the intention of inflicting injury on anyone trespassing thereon or with what is the equivalent of intention, reckless and wanton disregard of the consequences ”.
In my charge to the jury I told them ‘ ‘ If you find that there is no cause of action against the New York City Transit Authority whose electric current did the injury to the boy, then, of course, there can’t be any cause of action against the City; because the City wasn’t the primary actor whose instrumentality caused the injury. It is merely contended that it contributed in a negligent fashion to the occurrence. So I repeat — if your verdict is for the Transit Authority, it must also be for the City. ’ ’
Having concluded that there is no liability on the Transit Authority it follows that there can be no separate liability upon the part of the City.
Under the circumstances the motions to set aside the verdicts and for directed verdicts in favor of the defendants are granted. The cross claim of the City against the Transit Authority, which was submitted to me for determination, is necessarily dismissed in view o£ my principal determination herein.

 In its brief the Transit Authority says that the embankment is “ about 30 feet (high) and (runs) at an angle of 40 degrees upward.” There is no proof of this in the record but photographs in evidence seemingly bear out that statement.

 For subsequent history of the ease see, 286 App. Div. 1101, aff. 3 N Y 2d 857.