■ LEONARD WOLF et al., Appellants, v. RICHARD J. SMITH et al., as Trustees of the Property of the New York, New Haven and Hartford Railroad Company, et al., Respondents.— In consolidated actions to recover damages for personal injuries sustained by the infant plaintiff and for loss of services, etc., sustained by his mother, plaintiffs appeal from a judgment of the Supreme Court, Kings County, entered May 24, 1971, in favor of defendants after a nonjury trial. Judgment affirmed, without costs. In view of the holdings in *Van Houten* v. *New York, New Haven & Hartford R. R. Co.* (2 N Y 2d 739); *Lo Casto* v. *Long Is. R. R. Co.* (6 N Y 2d 470); *Ziehm* v. *Chesapeake & Ohio Ry. Co.* (25 A D 2d 934, affd. 19 N Y 2d 785); and *Lederman* v. *New York City Tr. Auth.* (36 Misc 2d 571, affd. 21 A D 2d 751, mot. for lv. to app. den. 14 N Y 2d 488), we are constrained to affirm the judgment entered upon the dismissal of plaintiffs' complaint. Latham, Shapiro and Gulotta, JJ., concur; Benjamin, J., dissents and votes to reverse the judgment and grant a new trial, with the following memorandum, in which Hopkins, Acting P. J., concurs: Section 52-b of the Railroad Law requires fencing of a railroad right of way when the Public Service Commission so directs, after a hearing and determination that such fencing is necessary for the public welfare. That section, as amended in 1940 and 1947 (L. 1940, ch. 294; L. 1947, ch. 563), was designed to protect children from injury on railroad property (see 1947 New York State Legislative Annual, pp. 228–229). In 1948 the Public Service Commission commenced a proceeding to require the fencing of a large part of the right of way of defendant Long Island Rail Road which was located in Brooklyn; included in the area involved in that proceeding was the site of the accident upon which this suit is based. Before that proceeding was completed, the Long Island Rail Road erected adequate fencing in the subject area; and, in view of that compliance with the plain intent of the proceeding, the proceeding was then closed without the entry of a formal order directing such fencing. Thereafter, defendants, the Long Island Rail Road and the trustees of the New York, New Haven and Hartford Railroad Company, allowed this fencing to fall into disrepair; numerous holes developed and a gate was left unlocked and open; and through these openings children often went onto the right of way and then

down to the bottom of the railroad cut along a well-worn path. On the day of this accident, the infant plaintiff, a 12-year-old boy, went through the open gate and down the path to the tracks. On the tracks was a stalled freight train. He climbed to the roof of one of the cars, by means of an attached ladder, and walked along it in a crouched position because of an overhead electric wire; and as he was doing so, the train suddenly lurched, his hand hit the wire and he was severely burned. On these facts, the trial court held that the infant plaintiff was a trespasser and defendants' only duty to him was to refrain from willful or wanton injury; and it dismissed the complaint on the ground that defendants had not been guilty of any such breach of duty. In my opinion that determination was erroneous and a new trial is required. It has recently been held that "the 'trespass' theory applied to children injured by dangerous conditions on land of owners having notice of the presence of children and the existence of danger has lost force as the law in New York has developed"; that the rule is the same whether the dangerous conditions be "static conditions on land" or "volatile substances"; and that "the rule today is that if the owner of land leaves it open and accessible to children; if he knows that children use it for play; and if he leaves accessible to them  *  *  *  [a dangerous condition], a case prima facie is made out if a child is thus injured" (*Patterson v. Proctor Paint & Varnish Co.*, 21 N Y 2d 447, 450, 453). Here, the proof clearly showed that the railroad right of way was left " open and accessible to children"; that children often went through the gate or holes in the fence, and down the path to the tracks in order to play there; and that the freight cars and overhead electric wires constituted a condition highly dangerous to children, in view of their known propensity to climb and play in such places. Hence, under the holding in *Patterson*, it was erroneous to dismiss the complaint on the theory that the infant plaintiff was a " trespasser" to whom no duty was owed except to refrain from willfully, wantonly injuring him. At bar, the fencing was installed after a proceeding to compel it had been instituted under section 52-b of the Railroad Law; and the proceeding was terminated only because the object of the proceeding had been accomplished. Hence, the installation of the fence can and should be considered a compliance with section 52-b. After it was installed, defendants obviously had a continuing duty to maintain it and keep it in good repair, since allowing it to fall into disrepair would frustrate the very purpose of the statute, which was to prevent children from getting onto the right of way and to protect them against injury on the tracks. The failure to keep this fencing in good repair and to keep the gate locked consequently was a violation of section 52-b. This violation of the protective statute was evidence of negligence and may be considered the infliction of willful, wanton injury or the creation of a trap rendering defendants liable to plaintiffs even under the pre-*Patterson* holdings concerning trespassers. In sum, under *Patterson*, the infant plaintiff has established defendants' liability for his injury; it was error to dismiss the complaint; and a new trial should be had. I therefore vote to reverse and grant a new trial.